Jared G. Parker (AZ Bar No. 006428)
PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, AZ 85020

Lisa G. Beckerman
Joanna Newdeck
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036

Counsel for Pinpoint Holdings, Inc.

Alisa C. Lacey (AZ Bar No. 010571)
Christopher C. Simpson
STINSON LEONARD STREET LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004

Counsel for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT ARIZONA**

| | |
|---|---|
| In re<br><br>ACCIPITER COMMUNICATIONS, INC., d/b/a ZONA COMMUNICATIONS,<br><br>Debtor. | Chapter 11<br>Case No. 2:14-bk-04372-GBN<br><br>**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY PINPOINT HOLDINGS, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

Pinpoint Holdings, Inc. and the Official Committee of Unsecured Creditors co-propose this plan for the resolution of all outstanding claims and equity interests.

**All holders of Claims or Equity Interests should read the Plan, the Disclosure Statement, and the related materials in their entirety.**

Subject to the restrictions on modifications set forth in Bankruptcy Code § 1127, Bankruptcy Rule 3019, and Section 11.01 of the Plan, the Plan Proponents may amend the Plan before its substantial consummation.

## ARTICLE 1.
## DEFINITIONS AND RULES OF INTERPRETATION

All capitalized terms used in the Plan are defined in this Article 1, the Bankruptcy Code, or the Bankruptcy Rules. "Including" means "including without limitation."

As used in the Plan, the following terms have the following meanings:

**1.01. Adequate Protection Payments**. The Debtor's payments of cash to RUS of $78,514.09 per month, under stipulated orders of the Bankruptcy Court in the Bankruptcy Case regarding the Debtor's use of cash collateral, made every month from April 2014 until December 2015.

**1.02. Administrative Claim**. A Claim for any expense Allowed under Bankruptcy Code §§ 503(b), 507(b), or 546(c)(2) and entitled to priority under Bankruptcy Code § 507(a)(2), including: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's business; (c) actual and necessary costs and expenses of preserving the Estate or administering the Chapter 11 Case; and (d) all Professional Fee Claims to the extent Allowed by Final Order under Bankruptcy Code § 330.

**1.03. Administrative Claims Bar Date**. The first Business Day 30 days after the Effective Date.

**1.04. Adversary Proceeding**. Adversary proceeding number 2:15-ap-00005-GBN in the Bankruptcy Case, under which the Committee, on the Estate's behalf, seeks, among other things, to equitably subordinate the RUS Claims to the claims of all creditors and, alternatively, to re-characterize the RUS Claims as Equity Interests.

**1.05. Allowed.** With respect to any Claim against, or Equity Interest in, the Debtor:

**a.** allowed by Final Order, whether or not following an objection to its allowance, a motion to estimate for purposes of allowance, or a request to subordinate filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court; or

**b.** proof of which, request for payment of which, or application for allowance of which was filed or deemed filed with the Bankruptcy Court on or before the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable, for filing proofs of claim or equity interest or requests for payment for Claims of that type against the Debtor or other applicable date established by order of the Bankruptcy Court, even if that date is after the Bar Date, the Administrative Claims Bar Date, the Professional Fee Bar Date, or the Rejection Damages Bar Date, as applicable; or

**c.** listed as undisputed, liquidated, and non-contingent in the Schedules and no objection to its allowance, motion to estimate for purposes of allowance, or request to subordinate has been filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.

**1.06. Avoidance Actions**. All statutory causes of action preserved for the Estate under Bankruptcy Code §§ 510, 542, 543, 544, 545, 547, 548, 549, 550, and 553 that the Estate may have against any Person. For the avoidance of doubt, under Bankruptcy Code § 546(a), the time period for the Debtor (or any party on its behalf) to bring preference actions seeking to avoid certain pre-Petition transfers has expired and, accordingly, Reorganized Accipiter will not seek to pursue any such preference actions. Reorganized Accipiter reserves all rights to bring an Avoidance Action with respect to any Claim not identified on the Claims Schedule.

**1.07. Bankruptcy Code**. Title 11 of the United States Code.

**1.08. Bankruptcy Court**. The United States District Court for the District of Arizona and, to the extent of any reference under 28 U.S.C. § 157, the bankruptcy unit of the District Court under 28 U.S.C. § 151.

**1.09. Bankruptcy Rules**. Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court applicable to the Chapter 11 Case.

**1.10. Bar Date**. The date fixed by the Bankruptcy Court by which Persons asserting a Claim against the Debtor (except Administrative Claims, Professional Fee Claims, and Rejection Damages Claims) are required to file a proof of claim or be forever barred from asserting a Claim against the Debtor or its property, from voting on the Plan, and from sharing in distributions under the Plan.

**1.11. Benefit Plans**. All benefit plans of whatever type that the Debtor provided to its employees, whether now in existence or previously terminated, and any rights of employees to extended coverage arising from any benefit plan, whether under the terms of that benefit plan or under applicable law.

**1.12. Business Day**. Any day other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006).

**1.13. Cash**. Currency, checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, money orders, negotiable instruments, and wire transfers of immediately-available funds.

**1.14. Chapter 11 Case**. The case under chapter 11 of the Bankruptcy Code for the Debtor pending before the Bankruptcy Court under Case No. 2:14-bk-04372-GBN.

**1.15. Claim**. A claim against the Debtor or its property as defined in Bankruptcy Code § 101(5), including: (a) any right to payment, whether or not the right is reduced to judgment, liquidated, fixed, contingent, matured, disputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, secured, or unsecured.

**1.16. Claims Schedule**. That certain schedule, attached as **Appendix 5** to the Disclosure Statement, which identifies those Claims by name of holder and amount that Reorganized

Accipiter will not object to on any basis, including pursuant to any Avoidance Action. To the extent any such Claim (i) is not the subject of an objection by the Debtor or another party in interest on the Effective Date or (ii) has been Disallowed by order of the Court, such identified Claims shall be deemed Allowed Claims on the Effective Date. The Claims Schedule shall be reasonably acceptable to the Plan Proponents.

**1.17. Class**. A category consisting of holders of Claims or Equity Interests substantially similar in nature to the Claims or Equity Interests of other holders placed in that category, as designated in Article 3 of the Plan.

**1.18. Collateral**. Any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, the Lien not avoidable or invalid under the Bankruptcy Code or applicable state law.

**1.19. Committee**. The official committee of unsecured creditors appointed in the Chapter 11 Case under Bankruptcy Code § 1102.

**1.20. Confirmation Date**. The date the Bankruptcy Court enters the Confirmation Order.

**1.21. Confirmation Hearing**. The evidentiary hearing at which the Bankruptcy Court considers confirmation of the Plan.

**1.22. Confirmation Order**. The order of the Bankruptcy Court confirming the Plan under the Bankruptcy Code. The Confirmation Order shall be in form and substance acceptable to the Plan Proponents.

**1.23. Contingent Claim**. Any Claim for which a proof of claim has been filed with the Bankruptcy Court that: (a) was not filed in a fixed amount, or has not accrued and depends on a future event that has not occurred and may never occur; and (b) has not been Allowed on or before the Effective Date.

**1.24. Cure**. The payment on the Effective Date of Cash or other property as a condition to the assumption or assumption and assignment by the Debtor of an executory contract or unexpired lease of nonresidential real property, in accordance with Bankruptcy Code § 365(b).

**1.25. D&O Policy**. Any directors and officers liability insurance policy or any applicable errors and omissions policy applicable to the Debtor's directors, officers, and managers.

**1.26. Debtor**. Accipiter Communications, Inc., doing business as Zona Communications, a Nevada corporation with its principal place of business in Phoenix, Arizona.

**1.27. Disallowed**. In reference to a Claim, a Claim or any portion of a Claim that: (a) has been disallowed or withdrawn by Final Order; or (b) with respect to a Claim other than an Administrative Claim, a Professional Fee Claim, or a Rejection Claim, was listed as disputed, unliquidated, or contingent in the Schedules and no proof of which was filed before the applicable Bar Date.

**1.28. Disclosure Statement**. The written disclosure statement relating to the Plan (including all exhibits and schedules) in the form approved by the Bankruptcy Court under Bankruptcy Code § 1125 and Bankruptcy Rule 3017.

**1.29. Disputed**. With respect to a Claim or Equity Interest, any Claim or Equity Interest: (a) listed in the Schedules as unliquidated, disputed, or contingent, or as to which the Debtor, the Committee, the Purchaser, Reorganized Accipiter, or any other party-in-interest has (i) interposed a timely objection or request for estimation, or (ii) sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, in each instance where such listing, objection, request for estimation, or action to limit recovery has not been withdrawn or determined by a Final Order; or (b) that is a Contingent Claim.

**1.30. Effective Date**. The date after the Confirmation Date selected by the Plan Proponents on which (a) no stay of the Confirmation Order is in effect and (b) all conditions to the Effective Date set forth in Section 8.02 of the Plan have been satisfied or waived in accordance with the Plan.

**1.31. Equity Interest**. Any equity interest in the Debtor represented by any certificated or uncertificated shares or membership interest issued to any Person before the Effective Date, and any warrants, options, or rights to purchase any equity interest.

**1.32. Equity Related Claim**. Any Claim by any Person other than the Debtor or Reorganized Accipiter: (a) arising from the rescission of a purchase or sale of an Equity Interest; or (b) for damages arising from the purchase or sale of an Equity Interest; or (c) that asserts equitable or contractual rights of reimbursement, contribution, or indemnification arising from such a Claim; including any Claim that has been or may be asserted by any Person other than the Debtor or Reorganized Accipiter against the Debtor on one or more of its officers or directors, asserting violations of federal securities laws or any applicable non-federal securities law.

**1.33. Estate**. The estate consisting of the Debtor's interests in property created under Bankruptcy Code § 541.

**1.34. Exit Facility**. That certain credit facility, in an aggregate principal amount of $4,000,000, to be entered into by the Purchaser and guaranteed by Reorganized Accipiter as of the Effective Date, substantially in the form, or on the terms, set forth in the Plan Supplement and shall be in form and substance acceptable to the Purchaser

**1.35. FCC Approvals**. Such consents, approvals, authorizations, licenses, permits, actions, waivers, no action statements, filings and/or notifications as are required to be made with or obtained from the Federal Communications Commission under the Communications Act of 1934 in order to consummate the transactions contemplated in the Plan.

**1.36. Final Order**. An order or judgment of the Bankruptcy Court: (a) as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired, or as to which any right to appeal, petition for certiorari, reargue, or rehear has been waived in writing in form and substance satisfactory to the Plan Proponents; and (b) if an appeal, writ of certiorari, or reargument or rehearing has been sought, as to which the highest court to which the order was appealed, or certiorari, reargument or rehearing was sought, has determined or denied the appeal,

writ of certiorari, reargument, or rehearing, and the time to take any further appeal, petition for writ of certiorari, or move for reargument or rehearing has expired; but the filing of a motion under Rule 59 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, with respect to the order does not prevent the order from being a Final Order.

**1.37. General Unsecured Claim**. Any Claim against the Debtor existing as of the Petition Date including a Rejection Claim but excluding a Secured Claim, an Administrative Claim, a Priority Tax Claim, a Priority Claim, an Equity Related Claim, or a RUS Claim.

**1.38. Installment Payments**. The meaning given to such term in Section 3.04 of the Plan.

**1.39. Litigation Claims**. All claims and causes of action in law or in equity, whether known or unknown, contingent or otherwise, that the Estate has brought or may have against any Person, including those listed in the Plan Supplement, other than Avoidance Actions. Failure to list a Litigation Claim in the Plan does not waive or release that Litigation Claim. For the avoidance of doubt, any Claims listed on the Claims Schedules shall not be deemed Litigation Claims.

**1.40. Miscellaneous Secured Claim**. Any Secured Claim, other than a Secured Claim held by RUS, that is: (a) listed in the Schedules as a liquidated, non-contingent, and undisputed secured claim, or (b) reflected in a proof of claim as a secured claim secured by a Lien on Collateral to the extent of the value of the collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if the claim is subject to setoff under Bankruptcy Code § 553, net of setoff.

**1.41. Net Working Capital**. All collectible account receivables, prepayments and materials (usable and saleable in the ordinary course) of the Debtor, ***less*** accounts payable, advanced billings and payments, customer credits, refunds, and deposits and other current and accrued liabilities of the Debtor; for the avoidance of doubt, the RUS Loan Claims shall be excluded from the calculation of the Net Working Capital.

**1.42. New Common Stock**. The common stock, $0.001 par value per share, to be authorized under the Amended and Restated Articles of Incorporation of Reorganized Accipiter.

**1.43. Office Building**. That certain office building located at 2238 W. Lone Cactus Drive, Suite 100, Phoenix, AZ 85027, which is currently owned by the Debtor and, on the Effective Date, will be owned by Reorganized Accipiter pursuant to the terms of the Plan.

**1.44. Petition Date**. March 28, 2014, the date on which the Debtor filed its voluntary chapter 11 petition in the Bankruptcy Court.

**1.45. Plan**. This chapter 11 plan, either in its present form or as it may be amended from time to time, including all its exhibits and the Plan Supplement.

**1.46. Plan Proponents.** The Purchaser and the Committee.

**1.47. Plan Supplement**. The compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be filed by the Plan Proponents no later than 14 days prior to the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice

to parties in interest, and additional documents filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement, comprised of, among other documents, the following, if any and as applicable: (a) the Restated Governance Documents; (b) the list of executory contracts and unexpired leases to be assumed and Cure amounts; (c) the Exit Facility or a term sheet outlining the material terms of the Exit Facility; (d) the selection of the Unsecured Creditor Trustee and governing documents related to the Unsecured Creditor Trust; and (d) the Litigation Claims. The Plan Supplement documents shall be in form and substance acceptable to the Purchaser; *provided, however*, that the selection of the Unsecured Creditor Trustee shall be made by the Committee and any such governing documents related thereto shall be reasonably acceptable in form and substance to the Committee and the Purchaser.

**1.48. Preserved Ordinary Course Administrative Claim**. Any Administrative Claim based on liabilities incurred by the Debtor in the purchase, lease, or use of goods and services in the ordinary course of its business, including Administrative Claims on account of services provided after the Petition Date to the Debtor by its employees, and Claims for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease of nonresidential real property after the Petition Date and before the effective date of the rejection of that contract or lease, but excluding Professional Fee Claims.

**1.49. Priority Claim**. Any Claim (or portion of a Claim) entitled to priority under Bankruptcy Code § 507(a) other than Priority Tax Claims and Administrative Claims.

**1.50. Priority Tax Claim**. Any Claim of a Governmental Unit entitled to priority under Bankruptcy Code § 507(a)(8).

**1.51. Professional**. A Person: (a) employed in the Chapter 11 Case by a Final Order under Bankruptcy Code §§ 327, 328, 363, or 1103 and compensated for services under Bankruptcy Code §§ 327, 328, 329, 330, and 331 or by a Final Order; or (b) for whom compensation and reimbursement has been Allowed by a Final Order under Bankruptcy Code § 503(b).

**1.52. Professional Fee Bar Date**. The first Business Day 30 days after the Effective Date.

**1.53. Professional Fee Claim**. An Administrative Claim for compensation and reimbursement of expenses of a Professional incurred before the Effective Date submitted in accordance with Bankruptcy Code § § 328, 330, 331, or 503(b).

**1.54. Pro Rata**. A proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of that Allowed Claim is the same as the ratio of all consideration distributed on account of all Allowed Claims in that Class to the amount of all Allowed Claims in that Class.

**1.55. Purchaser**. Pinpoint Holdings, Inc. or any designated affiliate of Pinpoint Holdings, Inc.

**1.56. Purchase Price**. The $5,250,000 purchase price to be paid by the Purchaser in order to acquire 100% of the New Common Stock on the Effective Date pursuant to the terms of this Plan.

**1.57. Regulatory Filings.** As defined in Section 4.07 of the Plan.

**1.58. Rejection Claim**. A Claim arising from the Debtor's rejection of an executory contract or unexpired lease either during the Chapter 11 Case or under the Plan other than a Claim for unpaid rent or contract payments arising under a rejected executory contract or unexpired lease after the Petition Date and before the effective date of the rejection of that contract or lease.

**1.59. Rejection Claims Bar Date**. The first Business Day 30 days after the Effective Date.

**1.60. Reorganized Accipiter**. Accipiter Communications, Inc., on and after the Effective Date.

**1.61. Restated Governance Documents**. The *Amended and Restated Articles of Incorporation* of Reorganized Accipiter and the *Amended and Restated Bylaws* of Reorganized Accipiter, which shall be in form and substance acceptable to the Purchaser and which shall be substantially in the forms included as part of the Plan Supplement.

**1.62. RUS**. Rural Utilities Service of the United States Department of Agriculture, acting through the United States of America.

**1.63. RUS A Loan Claim**. The Claim held by RUS as of the Petition Date arising from the Debtor's obligations under the *Telephone Loan Contract* dated as of July 3, 1996 between the Debtor, RUS and the Rural Telephone Bank (to which RUS is the successor), as well as *the Mortgage Note* of the same date and the *Mortgage Note* of the same date evidencing the Hardship Loan.

**1.64. RUS B Loan Claim**. The Claim held by RUS as of the Petition Date arising from the Debtor's obligations under the *Telephone Loan Contract Amendment* dated as of August 1, 2001 between the Debtor, RUS and the Rural Telephone Bank (to which RUS is the successor), as well as two *Mortgage Notes* of the same date.

**1.65. RUS C Loan Claim**. The Claim held by RUS as of the Petition Date arising from the Debtor's obligations under the *Loan Agreement* dated as of October 13, 2005 between the Debtor, RUS and the Rural Telephone Bank (to which RUS is the successor), as well as the *Promissory Notes* of the same date.

**1.66. RUS Loan Claims**. Collectively, the RUS A Loan Claim, the RUS B Loan Claim, and the RUS C Loan Claim.

**1.67. State PUC Approvals**. Such consents, approvals, authorizations, licenses, permits, actions, waivers, no action statements, filings and/or notifications as are required to be made with or obtained from any state public service or public utility commission or similar state regulatory bodies of U.S. states or possessions with jurisdiction over the provision of local and intrastate telecommunications services in order to consummate the transactions contemplated in the Plan.

**1.68. Schedules**. The schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor under Bankruptcy Code § 521 and Bankruptcy Rule 1007, as the schedules, list, and statements may have been or may be supplemented or amended from time to time.

**1.69. Secured Claim**. Any Claim (a) listed in the Schedules as a liquidated, non-contingent, and undisputed secured Claim that has not otherwise been satisfied or waived prior to the Confirmation Date, or (b) reflected in a proof of claim as a secured Claim, secured by a Lien on Collateral to the extent of the value of the Collateral, as determined in accordance with Bankruptcy Code § 506(a), or, if the Claim is subject to setoff under Bankruptcy Code § 553, net of the setoff.

**1.70. Unsecured Creditor Trust.** That certain trust formed in order to hold the lien granted on behalf of Class 4 unsecured creditors to secure the Installment Payments.

**1.71. Unsecured Creditor Trustee**. The trustee of the Unsecured Creditor Trust, who shall be selected by the Committee and be named as part of the Plan Supplement.

## ARTICLE 2.
## TREATMENT OF UNCLASSIFIED CLAIMS

**2.01. Unclassified Claims**. Under Bankruptcy Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on the Plan but are treated separately in accordance with Sections 2.02 and 2.03 of the Plan and under Bankruptcy Code § 1129(a)(9)(A).

**2.02. Allowed Administrative Claims**.

**a. Generally**. Unless otherwise agreed to by the holder of the Claim and the Purchaser or Reorganized Accipiter, as applicable, in full and final satisfaction, settlement, release and discharge of, and in exchange for, each Allowed Administrative Claim, each Allowed Administrative Claim (other than a Professional Fee Claim) is paid in full in Cash (or otherwise satisfied in accordance with its terms) on the latest of: (a) the Effective Date, or as soon after that date as feasible; (b) any date the Bankruptcy Court may fix, or as soon after that date as feasible; or (c) 30 days after the Claim is Allowed.

**b. Requests for Payment**. All requests for payment of an Administrative Claim (other than a Professional Fee Claim) must be served (i) if prior to the Effective Date, on the Debtor and the Plan Proponents or (ii) on or after the Effective Date, Reorganized Accipiter, and filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. Any holder of an Administrative Claim (other than a Professional Fee Claim) that fails to file and serve its request by the Administrative Claims Bar Date is forever barred from asserting its Administrative Claim against the Debtor or Reorganized Accipiter.

**2.03. Professional Fee Claims.**

**a. Pre-Effective Date Professional Fee Claims**. All requests for compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date shall be filed and served on the Debtor, Reorganized Accipiter, counsel to Reorganized Accipiter, the United States Trustee, counsel to the Plan Proponents and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than the

Professional Fee Bar Date. Holders of Professional Fee Claims that are required to file and serve applications for final allowance of their Professional Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtor, Reorganized Accipiter or their respective properties, and such Professional Fee Claims shall be deemed discharged. Objections to any Professional Fee Claims must be filed and served no later than twenty (20) days following the filing with the Court of any request for compensation or reimbursement of Professional Fee Claims.

**b. Post-Effective Date Professional Fees**. All reasonable fees and expenses incurred by Professionals after the Effective Date in furtherance of the Plan, the preparation, filing, and review of Professional Fee Claims, the prosecution of Avoidance Actions and Litigation Claims, and the resolution of Disputed Claims, shall be paid by Reorganized Accipiter on its receipt of an invoice, or on other terms Reorganized Accipiter and the Professional agree on, without the need for further Bankruptcy Court authorization or entry of a Final Order. Reorganized Accipiter may dispute and not pay any Professional fees incurred after the Effective Date. The Bankruptcy Court retains jurisdiction to resolve any such disputes.

**2.04. Preserved Ordinary Course Administrative Claims**. Each Allowed Preserved Ordinary Course Administrative Claim is paid in full in Cash at Reorganized Accipiter's election either: (a) in accordance with the terms and conditions under which the Claim arose; or (b) in the ordinary course of Reorganized Accipiter's business. Payments are made without further action by the holder of the Preserved Ordinary Course Administrative Claim.

**2.05. Allowed Priority Tax Claims**.

**a. Generally**. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the option of (i) the Purchaser, if before the Effective Date or (ii) Reorganized Accipiter, on or after the Effective Date, (a) Cash in an amount equal to such Allowed Priority Tax Claim on the later of (i) the Effective Date and (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (b) treatment in any other manner such that its Allowed Priority Tax Claim shall not be Impaired, including equal annual installment payments in Cash of an aggregate value, as of the Effective Date, equal to the Allowed amount of such Claim, over a period ending not later than five (5) years after the Petition Date.

**b. Secured Tax Claims**. If any Allowed Priority Tax Claim is secured by a Lien on any property of the Estate under applicable non-bankruptcy law, the holder of that Claim retains the Lien it held as of the Petition Date securing the Claim until the Claim is paid in full. On satisfaction of the Secured Tax Claim, the claimholder must release its Lien in accordance with applicable non-bankruptcy law.

## ARTICLE 3.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

**3.01. Class 1—Priority Claims**. Class 1 consists of all Priority Claims other than Priority Tax Claims.

**a. Impairment and Voting**. Class 1 is unimpaired. All holders of Allowed Priority Claims are deemed to have accepted the Plan and do not vote on the Plan.

**b. Treatment**. Each holder of an Allowed Priority Claim other than a Priority Tax Claim receives Cash in an amount equal to its Allowed Priority Claim on the later of: (i) the Effective Date, or as soon after that date as feasible; and (ii) 30 days after the Priority Claim is Allowed; unless, before the later of those two dates, the holder of the Claim and Reorganized Accipiter agree in writing to a different date.

**3.02. Class 2—Miscellaneous Secured Claims**. Class 2 consists of all Miscellaneous Secured Claims. Each holder of an Allowed Miscellaneous Secured Claim is considered to be in its own separate subclass within Class 2, and each such subclass is deemed to be a separate Class for purposes of this Plan.

**a. Impairment and Voting**. Class 2 is unimpaired. All holders of Allowed Miscellaneous Secured Claims in Class 2 are deemed to have accepted the Plan and do not vote on the Plan.

**b. Treatment**. Each holder of an Allowed Miscellaneous Secured Claim in Class 2 receives Cash in an amount equal to its Allowed Miscellaneous Secured Claim from the proceeds of the collateral to which the claim pertains on the later of: (i) the Effective Date, or as soon after that date as feasible; and (ii) the closing date of the sale of the collateral to which the claim pertains; unless, before the later of those two dates, the holder of the Claim and Reorganized Accipiter agree in writing to a different date. Each holder of an Allowed Miscellaneous Secured Claim retains all Liens on applicable property of the Estate arising under applicable law until that holder's Allowed Miscellaneous Secured Claim is paid in full under the Plan.

**3.03. Class 3—RUS Loan Claims**. Class 3 consists of the RUS Loan Claims.

**a. Allowance of Claims**. The RUS Loan Claims are Allowed in the aggregate amount of $20,755,214.00.

**b. Impairment and Voting**. Class 3 is impaired. RUS may vote on the Plan.

**c. Treatment**. On or as soon as is reasonably practicable after the Effective Date but in no event later than 5 business days after the Effective Date, in full and final satisfaction of the RUS Loan Claims, the holder(s) of the RUS Loan Claims shall receive a Cash payment of $5,250,000 and all liens held on account of the RUS Loan Claims shall be released, and shall be deemed released, by RUS. For the avoidance of doubt, RUS shall execute any such release or other necessary documents to evidence and effectuate the release of its liens requested by the Purchaser.

**3.04. Class 4—General Unsecured Claims**. Class 4 consists of all Allowed General Unsecured Claims, including Rejection Claims.

**a. Impairment and Voting**. Class 4 is impaired. All holders of Allowed Class 4 Claims may vote on the Plan.

**b. Treatment**. Each holder of an Allowed General Unsecured Claim receives, in full and final satisfaction of its Allowed General Unsecured Claim, payment in full in Cash of its Allowed General Unsecured Claim as follows: (i) its *pro rata* share of $200,000, to be distributed on or as soon as reasonably practicable after the Effective Date but in any event no later than 5 business days after the Effective Date so long as such creditor has provided Reorganized Accipiter with a completed W-8 or W-9 tax form and (ii) payment of the balance of its Allowed General Unsecured Claim as soon as is practicable but, in any event, no later than in eight equal monthly installments commencing on the first Business Day one month from the Effective Date, in all cases to be distributed on a *pro rata* basis (the "Installment Payments"). Reorganized Accipiter may prepay any Allowed General Unsecured Claim, or any remaining balance of such a Claim, in full or in part, at any time on or after the Effective Date without affecting the timing of payments on account of any other Allowed General Unsecured Claim. The Installment Payments shall be secured by a first lien on the Office Building in favor of the Unsecured Creditor Trustee, who shall be selected by the Committee and identified in the Plan Supplement.

**3.05. Class 5—Equity Interests and Equity Related Claims**. Class 5 consists of all Equity Interests and Equity Related Claims.

**a. Impairment and Voting**. Class 5 is impaired. All holders of Equity Interests and Equity Related Claims are deemed to reject the Plan without voting.

**b. Treatment**. Under Bankruptcy Code § 510(b), each Equity Related Claim is subordinated to all Claims or Equity Interests senior or equal to the Claim or Equity Interest represented by the Equity Related Claims. As of the Effective Date, all Equity Interests shall be cancelled and all Equity Related Claims are extinguished. The holders of Equity Interests and Equity Related Claims do not receive or retain any rights, property, or distributions on account of their Equity Interests or Equity Related Claims.

## ARTICLE 4.
## IMPLEMENTATION

**4.01. Sources of Cash for Plan Distributions**. All Cash necessary for Reorganized Accipiter to make payments pursuant to the Plan shall be obtained from existing Cash balances of the Debtor and Reorganized Accipiter (including the payment of the Purchase Price by the Purchaser) and the operations of the Debtor or Reorganized Accipiter, as applicable. Cash payments on account of Allowed Claims under the Plan and any Cure required under Section 5.03 of the Plan, are made from Reorganized Accipiter's Cash.

**4.02. Exit Facility**. On the Effective Date, Reorganized Accipiter shall enter into a guarantee of the Exit Facility. The Exit Facility shall be substantially in the form, or on the terms, set forth in the Plan Supplement, and shall be in form and substance acceptable to the Purchaser. Among

other terms, the security granted by Reorganized Accipiter to the lender in connection with its guarantee of the Exit Facility shall include a specific and limited lien subordination on the Office Building. Such Office Building lien shall be provided as security for the Installment Payments required to be made to the holders of General Unsecured Claims under Article 3.04 of the Plan.

**4.03. Restructuring Transactions**. On the Effective Date, 100% of the New Common Stock for Reorganized Accipiter will be issued to the Purchaser in exchange for the Purchase Price pursuant to the terms of the Plan. As of the Effective Date, Reorganized Accipiter shall be deemed to have assumed and to have agreed to pay, perform and satisfy all liabilities that become Allowed Claims that are to receive distributions and are not discharged under the Plan.

**4.04. Formation of the Unsecured Creditor Trust**. On the Effective Date, the Unsecured Creditor Trust shall be formed in order to hold the lien granted on behalf of Class 4 unsecured creditors to secure the Installment Payments. The Committee shall select the Unsecured Creditor Trustee. The selection of the Unsecured Creditor Trustee, and any governing documents related thereto, shall be filed as part of the Plan Supplement.

**4.05. Restated Governance Documents**. As of the Effective Date and without any further action by the directors of the Debtor or Reorganized Accipiter, the Debtor's corporate governance documents are amended and restated substantially in the forms of the Restated Governance Documents. The Restated Governance Documents, among other things, authorize the issuance of the New Common Stock and prohibit (to the extent required by Bankruptcy Code § 1123(a) and (b)) the issuance of non-voting equity securities. After the Effective Date, Reorganized Accipiter may amend its corporate governance documents as permitted by applicable law.

**4.06. Section 1145 Exemption**. In accordance with Bankruptcy Code § 1145, the issuance of the New Common Stock under the Plan is exempt from all federal, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in a security.

**4.07. Necessary Documents**. The Debtor and Reorganized Accipiter are authorized, empowered and directed to sign any documents necessary to effect any provision of the Plan, including any such documents reasonably requested by the Purchaser. Notwithstanding anything to the contrary herein, the Debtor is authorized, empowered and directed (a) to take all actions in order to consummate the terms of this Plan and the transactions hereunder including, without limitation, making all necessary applications, requests, notices and other filings and notifications (collectively, the "Regulatory Filings") to obtain or maintain all FCC Approvals and State PUC Approvals and (b) to execute any such other documents or filings prior to the Effective Date required, or reasonably requested by the Purchaser, to consummate the transactions contemplated in the Plan. For the avoidance of doubt, the Regulatory Filings made by the Debtor shall be in form and substance acceptable to the Purchaser. Further, the Purchaser shall act in good faith in making such Regulatory Filings and shall use commercial reasonably efforts to obtain the FCC Approvals and State PUC Approvals as promptly as is practicable and permitted under applicable law.

**4.08. Cancellation of Instruments and Agreements**. On the Effective Date, all agreements, instruments, and other documents relating to any Equity Interests, including the Equity Interests themselves, automatically terminate such that all obligations under all such agreements, instruments, and other documents are deemed fully and finally extinguished.

**4.09. Dismissal of Adversary Proceeding**. Prior to the Effective Date, the Bankruptcy Court shall enter an order dismissing the Adversary Proceeding with prejudice, which dismissal shall become effective only upon the Effective Date and payment of the Purchase Price, and the Committee and RUS shall each execute and deliver written releases of the other parties to the Adversary Proceeding which shall be effective only upon the Effective Date and payment of the Purchase Price.

**4.10. No Corporate Action Required**. As of the Effective Date, (a) the adoption, execution, delivery, and implementation of all documents, contracts, leases, instruments, releases, and other agreements related to or contemplated by the Plan, and (b) the other matters provided for under, or in furtherance of, the Plan involving corporate action required of the Debtor, are deemed to have occurred, are effective, binding, and enforceable in accordance with their respective terms, and are deemed authorized and approved in all respects without further order of the Bankruptcy Court or any further action by the Debtor's officers, directors, or shareholders.

**4.11. Post-Confirmation Management**.

**a. Initial Board of Directors**. The initial board of directors of Reorganized Accipiter as of the Effective Date comprises three directors: (1) Michael B. Urdahl; (2) J. Thomas Shoemaker; and (3) Dwight 'Doc' Wininger.

**b. Initial Officers**. The initial officers of Reorganized Accipiter as of the Effective Date are: (1) Michael B. Urdahl, President and Chief Executive Officer; (2) Chris Karn, Chief Operations Officer, (3) Bachtiyer Kholmatov, Chief Financial Officer, (4) J. Tomas Shoemaker, Chief Technical Officer, and (5) Dwight 'Doc' Wininger, Executive Vice President, External Affairs.

## ARTICLE 5.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**5.01. Assumption of Executory Contracts and Unexpired Leases**. All executory contracts and unexpired leases will be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code except those executory contracts and unexpired leases that (i) are designated as an exhibit to the Plan Supplement as assumed, (ii) have been assumed by a separate Final Order of the Bankruptcy Court, (iii) are the subject of a motion to assume pending on the Effective Date or are (iv) assumed pursuant to the terms of the Plan. The listing of a document in the Plan Supplement shall not constitute an admission by the Debtor or the Plan Proponents that such document is an executory contract or an unexpired lease or that the Debtor or Reorganized Accipiter has any liability thereunder.

**5.02. Approval**. Entry of the Confirmation Order constitutes: (a) the approval under Bankruptcy Code § 365 of the assumption of the executory contracts and unexpired leases

assumed under the Plan; and (b) the approval under Bankruptcy Code § 365 of the rejection of the executory contracts and unexpired leases rejected under the Plan. Notwithstanding anything contained in this Section 5.02 to the contrary, the Plan Proponents may, with the consent of the Purchaser, amend the Plan Supplement to add or change the treatment (assumed or rejected) of any executory contract or unexpired lease, thus changing the treatment of the contract or lease under the Plan, at any time before the Effective Date.

**5.03. Cure of Defaults**. On the Effective Date or as soon after as is feasible, Reorganized Accipiter must Cure any defaults under any executory contract or unexpired lease assumed under the Plan. Any monetary Cure required for the assumption of a particular contract or lease is indicated on an exhibit to the Plan Supplement. Any non-Debtor party to any such contract or lease that disputes the amount of Cure indicated on to the Plan Supplement exhibit must file a written objection with the Bankruptcy Court no later than the deadline for objecting to confirmation of the Plan. If the Plan Supplement exhibit is modified to add an executory contract or unexpired lease to be assumed less than 7 business day prior to the deadline for objecting to confirmation of the Plan, the non-Debtor party to such contract or lease shall have 7 business days to file an objection to the proposed Cure amount. Any such objections not raised in that manner are waived. The Debtor or Reorganized Accipiter will not, and need not as a condition to assuming any executory contract or unexpired lease under the Plan, Cure any default that need not be cured under Bankruptcy Code § 365(b).

**5.04. Rejection Claims Bar Date**. All Rejection Claims must be filed by the Rejection Claims Bar Date. Any Rejection Claim not filed by the Rejection Claims Bar Date is forever barred. All Rejection Claims are General Unsecured Claims under the Plan. With respect to any executory contract or unexpired lease rejected by the Debtor before the Effective Date, the deadline for filing a Rejection Claim remains the deadline set forth in the order of the Bankruptcy Court authorizing that rejection. If the order did not contain such a deadline, the deadline for filing a Rejection Claim is 30 days after the Effective Date.

**5.05. Indemnification Obligations**. Any obligation of the Debtor to indemnify any Person serving as a fiduciary of any employee benefit plan of the Debtor under charter, by-laws, contract, or applicable state law is an executory contract and is rejected as of the Effective Date. Any obligation of the Debtor to indemnify, reimburse, or limit the liability of any Person, including any officer or director of the Debtor, or any agent, professional, financial advisor, or underwriter of any securities issued by the Debtor related to any acts or omissions occurring before the Petition Date is rejected under the Plan as of the Confirmation Date if the Effective Date occurs. Any Claim resulting from these rejections in favor of any Person must be filed by the Rejection Claims Bar Date and constitutes a General Unsecured Claim. Notwithstanding any of the foregoing, nothing contained in the Plan affects the rights of any Person covered by an applicable D&O Policy with respect to such policy.

**5.06. Benefit Plans**. All Benefit Plans not already assumed before the Confirmation Date are assumed as of the Effective Date if the Effective Date occurs, other than bonus plans and incentive plans. The Plan Supplement will include a list of any such bonus or incentive plans which will be assumed, if any. For the avoidance of doubt, to the extent any Benefit Plan requires that the Debtor grant equity interests to such employee, each such Benefit Plans shall be deemed modified such that no such equity interest grants are required under the terms thereof

and any Equity Interests issued thereunder shall be deemed cancelled pursuant to the terms of the Plan. No Cure is required and no Cure will be made with respect to the assumption under the Plan of any Benefit Plan. Any non-Debtor beneficiary or participant in a Benefit Plan that disputes that no Cure is required for the assumption of the Benefit Plan must file an objection with the Bankruptcy Court no later than the deadline for objecting to confirmation of the Plan. Any such objections not raised in that manner are waived.

## ARTICLE 6.
## DETERMINATION OF CLAIMS

**6.01. Claims Administration**. As of and following the Effective Date, Reorganized Accipiter shall have the sole authority (a) to file, withdraw, or litigate to judgment objections to Claims or Equity Interests, (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) to amend the Schedules in accordance with the Bankruptcy Code, and (d) to administer and adjust the Claims Register to reflect any such settlements, withdrawals or compromises without any further notice to or action, order or approval by the Bankruptcy Court. Notwithstanding the foregoing, Reorganized Accipiter shall not object to any of the Claims identified on the Claims Schedule attached to the Disclosure Statement as **Appendix 5** and, to the extent any such Claim (i) is not the subject of an objection by the Debtor or another party in interest on the Effective Date or (ii) has been Disallowed by order of the Court, such identified Claims shall be deemed Allowed Claims on the Effective Date.

**6.02. Objections to Claims**. Notwithstanding the occurrence of the Effective Date, and except as to any Claim that has been Allowed before the Effective Date, Reorganized Accipiter may object to the allowance or seek estimation of any Claim against the Debtor on any grounds permitted by the Bankruptcy Code. Nothing in this section affects any party-in-interest's right to object to the allowance of any Claims or to seek the subordination of any Claim on any grounds permitted by the Bankruptcy Code. All objections to Claims must be brought by filing the appropriate pleading in the Bankruptcy Court before the first Business Day that is 180 days after the Effective Date, but the Bankruptcy Court may approve a later date on Reorganized Accipiter's motion filed (but not necessarily heard) before the first Business Day that is 180 days after the Effective Date.

**6.03. Disallowance of Certain Claims.** Any Claims held by Persons from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or by a Person that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and such Persons may not receive any distributions on account of their Claims until such time as such causes of action against such Persons have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtor by such Person have been turned over or paid to Reorganized Accipiter.

**6.04. Contingent Claims**. Until a Contingent Claim becomes an Allowed Claim or is Disallowed, the Claim is treated as a Disputed Claim for all purposes under the Plan. The holder of a Contingent Claim is entitled to a distribution under the Plan only when the Contingent Claim becomes an Allowed Claim. Any Contingent Claim for reimbursement, indemnification or

contribution held by a Person that may be liable with the Debtor on a Claim of a Creditor is Disallowed as of the Effective Date if: (a) that Creditor's Claim is Disallowed; (b) the Claim for reimbursement, indemnification or contribution is contingent as of the Effective Date; or (c) that Person asserts a right of subrogation to the rights of the Creditor under Bankruptcy Code § 509.

## ARTICLE 7.
## AVOIDANCE ACTIONS, LITIGATION CLAIMS

**7.01. Retention and Reservation**. All Avoidance Actions and Litigation Claims are retained and reserved for Reorganized Accipiter, which is designated as the Estate's representative under Bankruptcy Code § 1123(b)(3)(B) for purposes of the Avoidance Actions and Litigation Claims.

**7.02. Prosecution**. Reorganized Accipiter has the sole authority to prosecute, defend, compromise, settle, and otherwise deal with any Avoidance Actions and Litigation Claims, and does so in its capacity as a representative of the Estate in accordance with Bankruptcy Code § 1123(b)(3)(B). Reorganized Accipiter will pay the fees and costs associated with litigating the Avoidance Actions and the Litigation Claims. Reorganized Accipiter has sole discretion to determine in its business judgment which Avoidance Actions and Litigation Claims to pursue, which to settle, and the terms and conditions of those settlements.

## ARTICLE 8.
## CONDITIONS PRECEDENT

**8.01. Conditions to Confirmation**. The Plan may not be confirmed unless and until:

**a.** The Bankruptcy Court enters a Final Order approving the Disclosure Statement.

**b.** The Bankruptcy Court enters the Confirmation Order in form and substance acceptable to the Plan Proponents.

**c.** **Substance of Confirmation Order**. The Confirmation Order contains the following:

(i) The provisions of the Confirmation Order are non-severable and mutually dependent;

(ii) The Plan's assumption or rejection of all executory contracts and unexpired leases is approved;

(iii) The Debtor is released and discharged from all obligations arising under all executory contracts and unexpired leases rejected during the Chapter 11 Case or under the Plan;

(iv) The Debtor is authorized, empowered and directed (a) upon entry of the Confirmation Order, to take all actions in order to consummate the terms of the Plan and the transactions contemplated herein, including, without limitation, making all Regulatory Filings and (b) to execute any such other documents prior to the Effective Date required and reasonably

requested by the Purchaser in order to consummate the terms of the Plan and the transactions contemplated hereunder;

(v) In accordance with Bankruptcy Code § 1123(b)(3)(B), Reorganized Accipiter is appointed as the Estate's representative to prosecute, compromise, or abandon any Avoidance Actions and Litigation Claims in accordance with the Plan; and

(vi) The Bankruptcy Court retains jurisdiction to the fullest extent permissible by applicable law and at least to the extent contemplated by Article 10 of the Plan.

**8.02. Conditions to Effectiveness**. The Effective Date does not occur unless and until:

**a.** The Confirmation Date occurs;

**b.** The Confirmation Order is a Final Order and no request for revocation of the Confirmation Order under Bankruptcy Code § 1144 is pending;

**c.** The documentation for the Exit Facility shall have been executed and delivered by all of the parties thereto, including the guarantee by Reorganized Accipiter, which documentation shall be in form and substance acceptable to the Purchaser, and the Purchaser shall have received $4 million in loan proceeds thereunder;

**d.** The Debtor shall have (i) a minimum Cash on hand balance of not less than $1.5 million (exclusive of the Purchase Price payment) and (ii) delivered to the Purchaser documentation, in a form acceptable to the Purchaser, evidencing that the Debtor has a minimum Cash on hand balance of not less than $1.5 million (exclusive of the Purchase Price payment);

**e.** The Debtor shall have (i) a Net Working Capital of at least $250,000 and (ii) delivered to the Purchaser documentation, in a form acceptable to the Purchaser, evidencing that the Net Work Capital is at least $250,000;

**f.** All authorizations, consents and regulatory approvals, including the FCC Approvals and the State PUC Approvals, required in connection with the effectiveness of the Plan and consummation of the transactions contemplated in this Plan shall have been obtained;

**g.** (i) A Final Order dismissing the Adversary Proceeding with prejudice shall have been entered, which order shall be in form and substance acceptable to the Plan Proponents and RUS and (i) RUS shall have executed and delivered written releases with respect to all of the other parties in the Adversary Proceeding; and

**h.** All instruments and agreements to be issued, entered into, delivered, or filed under the Plan are issued, entered into, delivered, or filed and are effective.

**8.03. Waiver of Conditions**. The Plan Proponents may waive any condition to confirmation or the Effective Date, in whole or in part, at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to confirmation and consummation of the Plan.

## ARTICLE 9.
## TITLE TO PROPERTY; THIRD PARTY RIGHTS

**9.01. Vesting of Assets**. Except as provided in the Plan or the Confirmation Order, all property of the Estate vests in Reorganized Accipiter on the Effective Date free and clear of all Liens and Claims existing before the Effective Date. From and after the Effective Date, Reorganized Accipiter may use and dispose of its property free of any restrictions of the Bankruptcy Code, including the employment of, and payment to, Professionals except as otherwise provided in the Plan or the Confirmation Order.

**9.02. Discharge**. Except as provided in the Plan or the Confirmation Order: (a) the rights granted under this Plan and the treatment of Claims and Equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on any Claim from the Petition Date; and (b) confirmation of this Plan discharges the Debtor and Reorganized Accipiter from all Claims or other debts that arose before the Effective Date to the fullest extent allowed under Bankruptcy Code § 1141(a), (b), (c), and (d)(1).

**9.03. Injunction**.

**a. Generally**. Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold, or may hold any Claim or Equity Interest are permanently enjoined from taking any of the following actions on account of any such Claim or Equity Interest: (i) commencing or continuing in any manner any action or other proceeding against any property to be distributed under the Plan; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against any property to be distributed under the Plan; (iii) creating, perfecting, or enforcing any Lien or encumbrance against any property to be distributed under the Plan; and (iv) commencing or continuing any action that does not comply with or is inconsistent with the provisions of the Plan or the Bankruptcy Code.

**b. Limited Scope**. Except with respect to the Adversary Proceeding and Claims that are Allowed under this Plan, nothing in this Plan: (i) extinguishes, prohibits, or otherwise limits the right of any holder of a Claim to assert a right to setoff or recoupment arising in connection with that Claim as part of the resolution and treatment of that Claim under the Plan; (ii) extinguishes, prohibits, or otherwise limits the right of the Estate or Reorganized Accipiter to assert and prevail on any Avoidance Action or Litigation Claim; (iii) enjoins or otherwise precludes any party-in-interest from enforcing the terms of the Plan and the Confirmation Order.

**9.04. Exculpation**. None of the Debtor, the Committee, the Purchaser, Reorganized Accipiter, or any of their respective members, officers, directors, employees, advisors, professionals, or agents has any liability to any holder of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence. In all respects, the Debtor, the Committee, the Purchaser, Reorganized Accipiter, and each of their respective

members, officers, directors, employees, advisors, professionals, and agents are entitled to rely on the advice of counsel with respect to their duties and responsibilities under the Plan.

**9.05. Preservation of Insurance**. The satisfaction of Claims as provided in the Plan, except as necessary to be consistent with the Plan, does not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any other Person.

## ARTICLE 10.
## RETENTION OF JURISDICTION

**10.01. Bankruptcy Court Jurisdiction**. Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains as much jurisdiction over the Chapter 11 Case after the Effective Date as legally permissible, including jurisdiction to:

**a.** Allow, disallow, determine, liquidate, classify, estimate, or establish the amount, priority, or secured or unsecured status of any Claim, and resolve any request for payment of any Administrative Claim and any objection to the Allowance or priority of any Claim;

**b.** Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized under the Bankruptcy Code or the Plan;

**c.** Resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party and to hear, determine and, if necessary, liquidate any Claims arising from such rejection;

**d.** Ensure that distributions required under the Plan are accomplished in accordance with the Plan;

**e.** Decide or resolve any motions, adversary proceedings, contested matters, and any other matters and grant or deny any applications or motions involving the Debtor that may be pending on the Effective Date;

**f.** Enter any necessary or appropriate orders to implement or consummate the Plan's provisions and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

**g.** Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan, or any Person's obligations incurred in connection with the Plan;

**h.** Hear and determine any motion or application to modify the Plan before or after the Effective Date under Bankruptcy Code § 1127 or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with the Plan or the Disclosure Statement; or hear or determine any motion or application to remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document issued, entered into, filed or delivered in connection with the

Plan or the Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

**i.** Issue injunctions, enter and implement other orders, or take any other necessary or appropriate actions to restrain any entity's interference with consummation or enforcement of the Plan;

**j.** Enter and implement any necessary or appropriate orders if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

**k.** Determine any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document issued, entered into, filed, or delivered in connection with the Plan, the Disclosure Statement or the Confirmation Order;

**l.** Issue a final decree and enter an order closing the Chapter 11 Case;

**m.** Adjudicate any matter concerning the Unsecured Creditor Trust;

and

**n.** Adjudicate the Disputed Claims, the Avoidance Actions, and the Litigation Claims and any other cause of action or claims of the Estate.

## ARTICLE 11.
## AMENDMENT AND WITHDRAWAL OF PLAN

**11.01. Amendment of Plan**. At any time before the Confirmation Date, Plan Proponents may amend the Plan under Bankruptcy Code § 1127(a) as long as doing so does not materially and adversely affect the treatment and rights of the holders of Claims and Equity Interests under the Plan. After the Confirmation Date but before substantial consummation of the Plan as defined in Bankruptcy Code § 1101(2), the Plan Proponents or Reorganized Accipiter may, under Bankruptcy Code § 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and any matters necessary to carry out the Plan's purposes as long as those proceedings do not materially and adversely affect the treatment of holders of Claims or Equity Interests under the Plan. The Plan Proponents or Reorganized Accipiter must serve prior notice of those proceedings in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**11.02. Revocation or Withdrawal of Plan**. The Plan Proponents may revoke or withdraw the Plan at any time before the Confirmation Date. If withdrawn or revoked, the Plan is void and nothing contained in the Plan waives or affects any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor or an admission of any sort, and the Plan and any transaction contemplated by the Plan may not be admitted into evidence in any proceeding.

## ARTICLE 12.
## MISCELLANEOUS

**12.01. Effecting Documents; Further Transactions; Timing**. The Debtor and Reorganized Accipiter and all other parties any agreement or instrument to be executed under the Plan must, as of the Effective Date and without further order of the Bankruptcy Court, execute, deliver, file, or record all contracts, instruments, releases, and other agreements or documents contemplated in the Plan, and take all actions necessary or appropriate to effect and further evidence the terms of the Plan. All transactions required to occur on the Effective Date under the terms of the Plan are deemed to have occurred simultaneously.

**12.02. Exemption from Transfer Taxes**. Under Bankruptcy Code § 1146(a): (a) the issuance, distribution, transfer, and exchange of assets or property of the Estate; (b) the execution, assignment, modification, or recording of any lease or sublease; and (c) the execution, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, the Confirmation Order, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to, the foregoing are not subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, or real estate transfer tax, or other similar tax or governmental assessment and the appropriate state or local government officials or agents are directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

**12.03. Binding Effect**. The Plan is binding on, and inures to the benefit of, the Debtor and the holders of all Claims and Equity Interests and their respective successors and assigns.

**12.04. Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable or as provided in any document entered into in connection with the Plan, the rights, duties and obligations of any Person arising under the Plan are governed by, and construed and enforced in accordance with, the internal laws of the State of Arizona, without regard for Arizona's choice of law provisions.

**12.05. Modification of Treatment of Claims**. Reorganized Accipiter reserves the right to modify the treatment of any Allowed Claim in any manner adverse only to the holder of that Claim at any time after the Effective Date on that holder's prior written consent.

**12.06. Setoffs and Recoupment**. The Debtor, at the direction of the Purchaser, and Reorganized Accipiter may but are not required to set off or recoup against any Claim and the payments or other distributions to be made under the Plan in respect of such Claim, Claims (except those asserted in the Adversary Proceedings) of any nature that arose before the Petition Date that the Estate may have against the holder of such Claim to the extent such Claims may be set off or recouped under applicable law, but neither the failure to do so nor the fact of any Claim under the Plan becoming Allowed constitutes a waiver or release by the Estate of any such claim that it may have against such holder.

**12.07. Allocation between Principal and Interest.** To the extent that any Allowed Claim entitled to distribution under the Plan consists of indebtedness and accrued but unpaid interest

thereon, such distributions shall, for income tax purposes, be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest, as applicable.

**12.08. Notices**. Any notice required or permitted to be provided under the Plan must be in writing and served by certified return-receipt-requested U.S. mail, hand delivery, overnight courier, or read-receipt-enabled email.

**12.09. Delivery of Notices**. If personally delivered or sent by overnight courier in accordance with the Plan, notice is deemed delivered on actual receipt; if emailed in accordance with the Plan, notice is deemed delivered on the noticing party's receipt of the read-receipt; and if sent by U.S. mail in accordance with the Plan, notice is deemed delivered as of the date of delivery indicated on the receipt issued by the relevant postal service or, if the addressee fails or refuses to accept delivery, as of the date of that failure or refusal. Any party to the Plan may change its address for the purposes of the Plan by giving notice of the change.

**12.10. Severability**. If the Bankruptcy Court or any appellate court finds the Plan or any provision of the Plan to be invalid, illegal or unenforceable, or if the Bankruptcy Court cannot confirm the Plan under Bankruptcy Code § 1129, the Bankruptcy Court, at the Purchaser's request, with the consent of the Committee not to be unreasonably withheld, or Reorganized Accipiter's request, may retain the power to alter and interpret the Plan or any such provision to make it valid or enforceable to the maximum extent feasible, consistent with the original purpose of the provision held to be invalid or unenforceable, and such provision then becomes applicable as altered or interpreted. The Confirmation Order constitutes a judicial determination and provides that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**12.11. Plan Documents**. Notwithstanding anything to the contrary contained in the Plan, including any reference in the Plan to documents in the forms annexed to the Plan as exhibits or the Plan Supplement, the Plan Proponents may revise any such document by filing the revised document with the Bankruptcy Court at least five days before the deadline for voting on the Plan, or with the written consent of all parties in interest that are entitled to vote on the Plan and are materially and adversely affected by the revision.

**12.12. Inconsistency**. If any inconsistency between the Plan and the Disclosure Statement exists, the Plan governs. If any inconsistency between the Plan and any document promulgated under the Plan exists, the document governs.

**12.13. Withholding and Reporting Requirements**. In connection with the Plan and all instruments issued in connection with the Plan, the Debtor or Reorganized Accipiter, as applicable, must comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan remain subject to any such withholding and reporting requirements. The Debtor and Reorganized Accipiter, as applicable, may take all actions necessary to comply with such withholding and reporting requirements. Notwithstanding any other provision of the Plan, each holder of an Allowed Claim that receives a distribution under the Plan has sole responsibility for the

satisfaction or payment of any tax obligation imposed by any governmental unit, including income, withholding, and other tax obligation on account of such distribution.

**12.14. Post-Effective Date Fees; Final Decree**. Reorganized Accipiter is responsible for paying any post-Effective Date fees under 28 U.S.C. § 1930(a)(6) and filing post-confirmation reports until the Bankruptcy Court enters a final decree, which Reorganized Accipiter may seek as soon as feasible after distributions under the Plan have commenced. Notice of application for a final decree need be given only to those parties that, after the Effective Date, specifically request such notice in writing.

**12.15. Method of Payment; Payments, Filings, and Notices Only on Business Days.** Payments of Cash under the Plan must be made by check drawn on a domestic bank or by wire transfer from a domestic bank. Whenever any payment, distribution, filing, delivery, or notice to be made under the Plan is due on a day other than a Business Day, it may instead be made, without interest or penalty, on the immediately following Business Day.

**12.16. Delivery of Distributions; Undeliverable Distributions**. Distributions to a holder of an Allowed Claim will be made: (a) to the address set forth on the holder's proof of claim, the Schedules, or, if no proof of claim is filed and the holder does not appear on the Schedules, the holder's last known address; or (b) to the address set forth in any written notice of address change delivered to the Debtor and the Plan Proponents or Reorganized Accipiter, as applicable. If any holder's distribution is returned as undeliverable, no further distributions to that holder will be made unless and until Reorganized Accipiter is notified of the holder's then- current address. Claims held by a holder whose distributions are returned as undeliverable and who fails to notify Reorganized Accipiter of its correct address within 90 days after the distributions are returned to Reorganized Accipiter as undeliverable will be expunged, after which all unclaimed property reverts to Reorganized Accipiter free of any restrictions. Nothing contained in the Plan requires the Debtor, the Plan Proponents, or Reorganized Accipiter to attempt to locate any holder of an Allowed Claim.

**12.17. Failure to Negotiate Checks**. Checks issued in respect of distributions under the Plan are void if not negotiated within 90 days after issuance. Requests for reissuance of any such check must be made in writing directly to Reorganized Accipiter by the holder of the Allowed Claim with respect to which such check originally was issued. All amounts represented by any voided check will be held until 90 days after the voided check was issued. After that time, all such amounts vest in Reorganized Accipiter free of any restriction. Claims in respect of void checks and the underlying distributions are forever barred against the Debtor, Reorganized Accipiter, their agents, and their respective property, notwithstanding any federal or state escheat laws to the contrary.

September 29, 2016

Respectfully submitted,

*/s/ Jared G. Parker*
Jared G. Parker
PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, AZ 85020

Lisa G. Beckerman
Joanna Newdeck
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036

*Counsel for Pinpoint Holdings, Inc.*

*/s/ Alisa C. Lacey*
Alisa C. Lacey
Christopher C. Simpson
STINSON LEONARD STREET LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004

*Counsel for the Official Committee of Unsecured Creditors*