Jared G. Parker
PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, AZ 85020

Lisa G. Beckerman
Joanna Newdeck
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036

Counsel for Pinpoint Holdings, Inc.

Alisa C. Lacey
Christopher C. Simpson
STINSON LEONARD STREET LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004

Counsel for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT ARIZONA**

| | |
|---|---|
| In re<br><br>ACCIPITER COMMUNICATIONS, INC., d/b/a ZONA COMMUNICATIONS,<br><br>Debtor. | Chapter 11<br><br>Case No. 2:14-bk-04372-GBN<br><br>**SUPPLEMENT TO CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY PINPOINT HOLDINGS, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

Pinpoint Holdings, Inc. and the Official Committee of Unsecured Creditors, through counsel, pursuant to Section 1.47 of the *Chapter 11 Plan of Reorganization Proposed by Pinpoint Holdings, Inc. and the Official Committee of Unsecured Creditors* (the "**Plan")**, hereby supplement the Plan with the following documents:

a) The Restated Governance Documents attached here to as Exhibit A;

b) The List of Assumed Contracts and Leases and the Cure amounts attached here to as Exhibit B;

c) The Key Terms of the Commercial Loan Agreement attached here to as Exhibit C;

d) The selection of Christopher Linscott as the Unsecured Creditor Trustee, a *curriculum vitae* for Mr. Linscott and the form of Deed of Trust and Assignment

of Rents (the "Deed of Trust") designating Mr. Linscott as Trustee under the Deed of Trust attached here to as Exhibit D;

e) The Litigation Claims attached hereto as Exhibit E; and

f) A Revised Appendix Five, the Amended and Restated Claims Schedule amending and restating the original Appendix Five filed with the Plan. The Revised Appendix Five is attached hereto as Exhibit F.

DATED this 30th day of November, 2016.

*/s/ Jared G. Parker*
Jared G. Parker
PARKER SCHWARTZ, PLLC
7310 North 16th Street, Suite 330
Phoenix, AZ 85020

Lisa G. Beckerman
Joanna Newdeck
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, NY 10036

*Counsel for Pinpoint Holdings, Inc.*

*/s/ Christopher C. Simpson*
Alisa C. Lacey
Christopher C. Simpson
STINSON LEONARD STREET LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004

*Counsel for the Official Committee of Unsecured Creditors*

EXHIBIT A

Restated Governance Documents

Amended and Restated Articles of Incorporation of Accipiter Communications, Inc.

Amended and Restated By-laws of Accipiter Communications, Inc.

**AMENDED AND RESTATED**
**ARTICLES OF INCORPORATION**
**OF**
**ACCIPITER COMMUNICATIONS, INC.**

Accipiter Communications, Inc., a corporation organized and existing under the laws of the State of Nevada, hereby certifies as follows:

The name of the corporation is Accipiter Communications, Inc. (the "***Corporation***"). The Corporation filed its original Articles of Incorporation with the Secretary of State of the State of Nevada on January 12, 1995 (as amended and restated, and as further amended, supplemented or otherwise modified prior to the filing of this Amended and Restated Articles of Incorporation, the "***Current Articles of Incorporation***"). This Amended and Restated Articles of Incorporation (as amended, amended and restated, supplemented or otherwise modified from time to time, these "***Articles of Incorporation***") was duly adopted, without the need for approval of the Board of Directors or the stockholders of the Corporation, in accordance with §§ 78.390, 78.403 and 78.622 of the Nevada Revised Statute (the "***NRS***") and in accordance with a plan of reorganization of the Corporation (the "***Plan***") approved by order of the United States Bankruptcy Court for the District of Arizona in *In re: Accipiter Communications, Inc., d/b/a Zona Communications*, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330), as amended (the "***Bankruptcy Code***"), which Plan became effective on [●], 2016 (the "***Plan Effective Date***").

The Current Articles of Incorporation of the Corporation are hereby amended and restated to read in its entirety as follows:

ARTICLE I
NAME

The name of the corporation is Accipiter Communications, Inc. (the "***Corporation***").

ARTICLE II
PURPOSE

The purpose for which the Corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the NRS.

ARTICLE III
REGISTERED AGENT

The street address of the initial registered office of the Corporation in the State of Nevada is 3773 Howard Hughes Pkwy, Suite 500S in the City of Las Vegas, County of Clark, postal code 89169-6014, and the name of the Corporation's registered agent at such address is Incorp Services, Inc.

## ARTICLE IV
## CAPITALIZATION

Section 4.1 Authorized Capital Stock. The total number of shares of capital stock that the Corporation is authorized to issue is 1,000 shares, in one class consisting of 1,000 shares of common stock, par value $0.01 per share. To the extent prohibited by Section 1123(a)(6) of the Bankruptcy Code, the Corporation will not issue non-voting equity securities; provided, however, the foregoing restriction will (a) have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

## ARTICLE V
## DIRECTORS

Unless and except to the extent that the By-Laws shall so require, the election of directors need not be by written ballot.

## ARTICLE VI
## LIMITATION OF DIRECTOR LIABILITY; INDEMNIFICATION AND ADVANCEMENT OF EXPENSES

Section 6.1 Limitation of Director Liability. To the fullest extent that the NRS or any other law of the State of Nevada as the same exists or is hereafter amended permits the limitation or elimination of the liability of directors, no person who is or was a director of the Corporation shall be personally liable to the Corporation or any of its stockholders for monetary damages for breach of fiduciary duty as a director. Any repeal or amendment of this Section 6.1 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of these Articles of Incorporation inconsistent with this Section 6.1 will, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to further limit or eliminate the liability of directors) and shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or amendment or adoption of such inconsistent provision with respect to acts or omissions occurring prior to such repeal or amendment or adoption of such inconsistent provision.

Section 6.2 Indemnification and Advancement of Expenses.

(a) To the fullest extent permitted by applicable law, as the same exists or may hereafter be amended, the Corporation shall indemnify and hold harmless each person who is or was made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "***proceeding***") by reason of the fact that he or she is or was a director, officer, employee or agent of the Corporation or, while a director , officer, employee or agent of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with respect to an employee benefit plan (an "***indemnitee***"),

whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, against all expenses, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and penalties and amounts paid in settlement) reasonably incurred or suffered by such indemnitee in connection with such proceeding ("***Damages***"). The right to indemnification conferred by this Section 6.2 shall include the right to be paid by the Corporation the expenses incurred in defending or otherwise participating in any such proceeding in advance of its final disposition; provided, however, that, if the NRS requires, an advancement of expenses shall be made only upon delivery to the Corporation of an undertaking, by or on behalf of the indemnitee, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnitee is not entitled to be indemnified for the expenses under this Section 6.2 or otherwise. The rights to indemnification and advancement of expenses conferred by this Section 6.2 shall be contract rights and such rights shall continue as to an indemnitee who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators. Notwithstanding the foregoing provisions of this Section 6.2, except for proceedings to enforce rights to indemnification and advancement of expenses, the Corporation shall indemnify and advance expenses to an indemnitee in connection with a proceeding (or part thereof) initiated by such indemnitee only if such proceeding (or part thereof) was authorized by board of directors of the Corporation (the "***Board***").

(b) Certain indemnitees that are directors, officers, employees, stockholders, partners, limited partners, members, equityholders, managers, or advisors of any stockholder of the Corporation or any of such stockholder's affiliates (each such person, a "***Fund Indemnitee***") may have certain rights to indemnification, advancement of expenses and/or insurance provided by or on behalf of such stockholder and/or its affiliates (collectively, the "***Fund Indemnitors***"). Notwithstanding anything to the contrary in these Articles of Incorporation or otherwise: (i) the Corporation is the indemnitor of first resort (i.e., the Corporation's obligations to each Fund Indemnitee are primary and any obligation of the Fund Indemnitors to advance Damages or to provide indemnification for such Damages incurred by each Fund Indemnitee are secondary), (ii) the Corporation shall be required to advance the full amount of Damages incurred by each Fund Indemnitee and will be liable for the full amount of all such Damages paid in settlement to the extent legally permitted and as required by this these Articles of Incorporation, without regard to any rights each Fund Indemnitee may have against the Fund Indemnitors, and (iii) the Company irrevocably waives, relinquishes and releases the Fund Indemnitors from any and all claims against the Fund Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof. Notwithstanding anything to the contrary in these Articles of Incorporation or otherwise, no advancement or payment by the Fund Indemnitors on behalf of a Fund Indemnitee with respect to any claim for which such Fund Indemnitee has sought indemnification or advancement of Damages from the Corporation shall affect the foregoing and the Fund Indemnitors will have a right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of such Fund Indemnitee against the Corporation. The Fund Indemnitors are express third party beneficiaries of the terms of this Section 6.2(b).

(c) The rights to indemnification and advancement of expenses conferred on any indemnitee by this Section 6.2 shall not be exclusive of any other rights that any indemnitee may

have or hereafter acquire under law, these Articles of Incorporation, the By-Laws, an agreement, vote of stockholders or disinterested directors, or otherwise.

(d) Any repeal or amendment of this Section 6.2 by the stockholders of the Corporation or by changes in law, or the adoption of any other provision of these Articles of Incorporation inconsistent with this Section 6.2, shall, unless otherwise required by law, be prospective only (except to the extent such amendment or change in law permits the Corporation to provide broader indemnification rights on a retroactive basis than permitted prior thereto), and shall not in any way diminish or adversely affect any right or protection existing at the time of such repeal or amendment or adoption of such inconsistent provision in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

(e) This Section 6.2 shall not limit the right of the Corporation, to the extent and in the manner authorized or permitted by law, to indemnify and to advance expenses to persons other than indemnitees.

## ARTICLE VII
## BY-LAWS

In furtherance and not in limitation of the powers conferred upon it by law, the Board shall have the power to adopt, amend, alter or repeal the By-Laws of the Corporation. The By-Laws also may be adopted, amended, altered or repealed by the stockholders.

## ARTICLE VIII
## AMENDMENT OF CERTIFICATE OF INCORPORATION

The Corporation reserves the right to amend, alter, change or repeal any provision contained in these Articles of Incorporation (including any Preferred Stock Designation), in the manner now or hereafter prescribed by these Articles of Incorporation and the NRS; and except as set forth in ARTICLE VI, all rights, preferences and privileges herein conferred upon stockholders, directors or any other persons by and pursuant to these Articles of Incorporation in its present form or as hereafter amended are granted subject to the right reserved in this Article.

[Signature page follows]

IN WITNESS WHEREOF, the incorporator of the Corporation hereto has caused this Amended and Restated Articles of Incorporation to be duly executed as of _____________, 2016.

_____________________________________________
__________________________, Authorized Person

AMENDED AND RESTATED

BY-LAWS

OF

ACCIPITER COMMUNICATIONS, INC.,

a Nevada corporation

(the "***Corporation***")

(Adopted as of [●], 2016)

**AMENDED AND RESTATED**

**BY-LAWS**

**OF**

**ACCIPITER COMMUNICATIONS, INC.**

**ARTICLE I.**
**OFFICES**

**Section 1.1. Registered Office**. The registered office of the Corporation within the State of Nevada shall be located at either (a) the principal place of business of the Corporation in the State of Nevada or (b) the office of the corporation or individual acting as the Corporation's registered agent in Nevada.

**Section 1.2. Additional Offices**. The Corporation may, in addition to its registered office in the State of Nevada, have such other offices and places of business, both within and outside the State of Nevada, as the Board of Directors of the Corporation (the "***Board***") may from time to time determine or as the business and affairs of the Corporation may require.

**ARTICLE II.**
**STOCKHOLDERS MEETINGS**

**Section 2.1. Annual Meetings**. Unless directors are elected by written consent in lieu of an annual meeting as permitted by applicable law or an annual meeting is otherwise not required by applicable law, an annual meeting of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a). At each annual meeting, the stockholders shall elect directors of the Corporation and may transact any other business as may properly be brought before the meeting. Stockholders may, unless the Corporation's Articles of Incorporation, as the same may be amended or restated from time to time (the "***Articles of Incorporation***"), provides otherwise, act by written consent to elect directors; provided, however, that if such consent is less than unanimous, such action by written consent may be in lieu of holding an annual meeting only if all of the directorships to which directors could be elected at an annual meeting held at the effective time of such action are vacant and are filled by such action.

**Section 2.2. Special Meetings**. Except as otherwise required by applicable law or provided in the Articles of Incorporation, special meetings of stockholders, for any purpose or purposes, may be called only by the Chairman of the Board, Chief Executive Officer or the President, by the Board, or by the Secretary at the request in writing of stockholders holding shares representing a majority of the voting power of the outstanding shares entitled to vote on the matter for which such meeting is to be called. The Secretary shall call such a meeting upon receiving such a request. Special meetings of stockholders shall be held at such place and time and on such date as shall be determined by the Board and stated in the Corporation's notice of the meeting, provided that the Board may in its sole discretion determine that the meeting shall

not be held at any place, but may instead be held solely by means of remote communication pursuant to Section 9.5(a).

**Section 2.3. Notices**. Notice of each stockholders meeting stating the place, if any, date and time of the meeting, the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such meeting, and the record date for determining the stockholders entitled to vote at the meeting if such date is different from the record date for determining stockholders entitled to notice of the meeting shall be given in the manner permitted by Section 9.3 to each stockholder entitled to vote thereat as of the record date for determining the stockholders entitled to notice of the meeting. Such notice shall be given by the Corporation not less than 10 nor more than 60 days before the date of the meeting. If said notice is for a stockholders meeting other than an annual meeting, it shall in addition state the purpose or purposes for which the meeting is called, and the business transacted at such meeting shall be limited to the matters so stated in the Corporation's notice of meeting (or any supplement thereto).

**Section 2.4. Quorum**. Except as otherwise provided by applicable law, the Articles of Incorporation or these By-Laws, the presence, in person or by proxy, at a stockholders meeting of the holders of shares of outstanding capital stock of the Corporation representing a majority of the voting power of all outstanding shares of capital stock of the Corporation entitled to vote at such meeting shall constitute a quorum for the transaction of business at such meeting, except that when specified business is to be voted on by a class or series of stock voting as a class, the holders of shares representing a majority of the voting power of the outstanding shares of such class or series shall constitute a quorum of such class or series for the transaction of such business. If a quorum shall not be present at any meeting of the stockholders, the chairman of the meeting or the stockholders entitled to vote thereat so present, by a majority in voting power thereof, may adjourn the meeting from time to time in the manner provided in Section 2.6 until a quorum shall attend. The stockholders present at a duly convened meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Shares of its own stock belonging to the Corporation or to another corporation, if a majority of the voting power of the shares entitled to vote in the election of directors of such other corporation is held, directly or indirectly, by the Corporation, shall neither be entitled to vote nor be counted for quorum purposes; provided, however, that the foregoing shall not limit the right of the Corporation or any such other corporation to vote shares held by it in a fiduciary capacity.

**Section 2.5. Voting of Shares**.

(a) Voting Lists. The Secretary shall prepare, or shall cause the officer or agent who has charge of the stock ledger of the Corporation to prepare, at least 10 days before each meeting of stockholders, a complete list of the stockholders of record entitled to vote at the meeting (provided, however, if the record date for determining the stockholders entitled to vote is less than 10 days before the meeting date, the list shall reflect the stockholders entitled to vote as of the tenth day before the meeting date), arranged in alphabetical order for each class of stock and showing the address and the number of shares registered in the name of each stockholder. Nothing contained in this Section 2.5(a) shall require the Corporation to include electronic mail addresses or other electronic contact information on such list. Such list shall be open to the

examination of any stockholder, for any purpose germane to the meeting, during ordinary business hours for a period of at least 10 days prior to the meeting: (i) on a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation. If the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to stockholders of the Corporation. If the meeting is to be held at a place, then the list of stockholders entitled to vote at the meeting shall be produced and kept at the time and place of the meeting during the whole time thereof, and may be examined by any stockholder who is present. If a meeting of stockholders is to be held solely by means of remote communication as permitted by Section 9.5(a), then such list shall be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of meeting. The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the list required by this Section 2.5(a) or to vote in person or by proxy at any meeting of stockholders.

(b) Manner of Voting. At any stockholders meeting, every stockholder entitled to vote may vote in person or by proxy. If authorized by the Board, the voting by stockholders or proxyholders at any meeting conducted by remote communication may be effected by a ballot submitted by electronic transmission (as defined in Section 9.3(c)), provided that any such electronic transmission must either set forth or be submitted with information from which the Corporation can determine that the electronic transmission was authorized by the stockholder or proxyholder. The Board, in its discretion, or the chairman of the meeting of stockholders, in such person's discretion, may require that any votes cast at such meeting shall be cast by written ballot.

(c) Proxies. Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for such stockholder by proxy, but no such proxy shall be voted or acted upon after three years from its date, unless the proxy provides for a longer period. Proxies need not be filed with the Secretary until the meeting is called to order, but shall be filed with the Secretary before being voted. Without limiting the manner in which a stockholder may authorize another person or persons to act for such stockholder as proxy, either of the following shall constitute a valid means by which a stockholder may grant such authority:

(i) A stockholder may execute a writing authorizing another person or persons to act for such stockholder as proxy. Execution may be accomplished by the stockholder or such stockholder's authorized officer, director, employee or agent signing such writing or causing such person's signature to be affixed to such writing by any reasonable means, including, but not limited to, by facsimile signature.

(ii) A stockholder may authorize another person or persons to act for such stockholder as proxy by transmitting or authorizing the transmission of an electronic transmission to the person who will be the holder of the proxy, provided that any such electronic transmission must either set forth or be submitted with information from which it can be determined that the electronic transmission was authorized by the stockholder.

Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission authorizing another person or persons to act as proxy for a stockholder may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used; provided that such copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

(d) Required Vote. The election of directors shall be determined by a plurality of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon. All other matters shall be determined by the vote of a majority of the votes cast by the stockholders present in person or represented by proxy at the meeting and entitled to vote thereon, unless the matter is one upon which, by applicable law, the Articles of Incorporation or these By-Laws, a different vote is required, in which case such provision shall govern and control the decision of such matter.

(e) Inspectors of Election. The Board may, and shall if required by law, in advance of any meeting of stockholders, appoint one or more persons as inspectors of election, who may be employees of the Corporation or otherwise serve the Corporation in other capacities, to act at such meeting of stockholders or any adjournment thereof and to make a written report thereof. The Board may appoint one or more persons as alternate inspectors to replace any inspector who fails to act. If no inspectors of election or alternates are appointed by the Board, the chairman of the meeting shall appoint one or more inspectors to act at the meeting. Each inspector, before discharging his or her duties, shall take and sign an oath faithfully to execute the duties of inspector with strict impartiality and according to the best of his or her ability. The inspectors shall ascertain and report the number of outstanding shares and the voting power of each; determine the number of shares present in person or represented by proxy at the meeting and the validity of proxies and ballots; count all votes and ballots and report the results; determine and retain for a reasonable period a record of the disposition of any challenges made to any determination by the inspectors; and certify their determination of the number of shares represented at the meeting and their count of all votes and ballots. No person who is a candidate for an office at an election may serve as an inspector at such election. Each report of an inspector shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting. If there is more than one inspector, the report of a majority shall be the report of the inspectors.

**Section 2.6. Adjournments**. Any meeting of stockholders, annual or special, may be adjourned by the chairman of the meeting or by the stockholders present and entitled to vote thereat, by a majority in voting power thereof, from time to time, whether or not there is a quorum, to reconvene at the same or some other place. Notice need not be given of any such adjourned meeting if the date, time, place, if any, thereof, and the means of remote communication, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken. At the adjourned meeting the stockholders, or the holders of any class or series of stock entitled to vote separately as a class, as the case may be, may transact any business that might have been transacted at the original meeting. If the adjournment is for more than 30 days, notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. If after the adjournment a new record date for stockholders

entitled to vote is fixed for the adjourned meeting, the Board shall fix a new record date for notice of such adjourned meeting in accordance with Section 2.3 and shall give notice of the adjourned meeting to each stockholder of record entitled to vote at such adjourned meeting as of the record date fixed for notice of such adjourned meeting.

**Section 2.7. Conduct of Meetings**. The chairman of each annual and special meeting of stockholders shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the Chief Executive Officer, or if the Chief Executive Officer is not a director, the President (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the President or if the President is not a director, such other person as shall be appointed by the Board, or in the absence of such appointment, a chairman chosen at the meeting. The date and time of the opening and the closing of the polls for each matter upon which the stockholders will vote at a meeting shall be announced at the meeting by the chairman of the meeting. The Board may adopt such rules and regulations for the conduct of the meeting of stockholders as it shall deem appropriate. Except to the extent inconsistent with these By-Laws or such rules and regulations as adopted by the Board, the chairman of any meeting of stockholders shall have the right and authority to convene and to adjourn the meeting, to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are appropriate for the proper conduct of the meeting. Unless and to the extent determined by the Board or the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure. The secretary of each annual and special meeting of stockholders shall be the Secretary or, in the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary so appointed to act by the chairman of the meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

**Section 2.8. Consents in Lieu of Meeting**. Unless otherwise provided by the Articles of Incorporation, any action required or permitted to be taken at any annual or special meeting of stockholders may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum voting power that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the Corporation to its registered office in the State of Nevada, the Corporation's principal place of business, or the Secretary. Every written consent shall bear the date of signature of each stockholder who signs the consent and no written consent shall be effective to take the corporate action referred to therein unless, within 60 days of the date the earliest dated consent is delivered to the Corporation, a written consent or consents signed by a sufficient number of holders to take such action are delivered to the Corporation by delivery to the Corporation's registered office in the State of Nevada, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. An electronic transmission consenting to the action to be taken and transmitted by a stockholder, proxyholder or a person or persons authorized to act for a stockholder or proxyholder shall be deemed to be written, signed and dated for purposes hereof if such electronic transmission sets forth or is delivered with information from which the Corporation can determine that such transmission was transmitted by

a stockholder or proxyholder (or by a person authorized to act for a stockholder or proxyholder) and the date on which such stockholder, proxyholder or authorized person transmitted such transmission. The date on which such electronic transmission is transmitted shall be deemed to be the date on which such consent was signed. No consent given by electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and delivered to the Corporation by delivery either to the Corporation's registered office in the State of Nevada, the Corporation's principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be made by hand or by certified or registered mail, return receipt requested. Notwithstanding the limitations on delivery in the previous sentence, consents given by electronic transmission may be otherwise delivered to the Corporation's principal place of business or to the Secretary if, to the extent, and in the manner provided by resolution of the Board. Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used; provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders were delivered to the Corporation as provided in this Section 2.8.

## ARTICLE III.
## DIRECTORS

**Section 3.1. Powers**. The business and affairs of the Corporation shall be managed by or under the direction of the Board, which may exercise all such powers of the Corporation and do all such lawful acts and things as are not by statute or by the Articles of Incorporation or by these By-Laws required to be exercised or done by the stockholders. Directors need not be stockholders or residents of the State of Nevada.

**Section 3.2. Number; Term**. The number of directors of the Corporation on the Effective Date shall be three. Thereafter the number of directors may be determined from time to time by the Board, but no decrease in such number shall have the effect of shortening the term of any incumbent director. Except as otherwise provided in the Articles of Incorporation, the directors shall be elected at the annual meeting of stockholders to hold office until the next succeeding annual meeting of stockholders. Each director shall hold office for the term for which such director is elected and until his or her successor shall have been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

**Section 3.3. Newly Created Directorships and Vacancies**. Except as otherwise provided in the Articles of Incorporation, vacancies resulting from death, resignation, retirement, disqualification, removal or other cause and newly created directorships resulting from an increase in the number of directors elected by all of the stockholders having the right to vote as a single class may be filled by a majority vote of the directors then in office, even if less than a quorum, by a sole remaining director, or by the stockholders. Except as otherwise provided in the Articles of Incorporation, if the holders of any class or classes of stock or series thereof are

entitled to elect one or more directors by the Articles of Incorporation, vacancies and newly created directorships of such class or classes or series may be filled only by a majority of the directors elected by such class or classes or series thereof then in office, by a sole remaining director so elected, or by the stockholders of such class or classes or series thereof. Except as otherwise provided in the Articles of Incorporation, any director elected or chosen in accordance with this Section 3.3 shall hold office until the next annual election of directors and until his or her successor shall have been elected and qualified, subject to such director's earlier death, resignation, retirement, disqualification or removal.

**Section 3.4. Compensation**. Unless otherwise restricted by the Articles of Incorporation or these By-Laws, the Board shall have the authority to fix the compensation of directors. The directors may be reimbursed their expenses, if any, of attendance at each meeting of the Board and may be paid either a fixed sum for attendance at each meeting of the Board or other compensation as director. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor. Members of committees of the Board may be allowed like compensation and reimbursement of expenses for attending committee meetings.

## ARTICLE IV.
## BOARD MEETINGS

**Section 4.1. Annual Meetings**. The Board shall meet as soon as practicable after the adjournment of each annual stockholders meeting at the place of the annual stockholders meeting unless the Board shall fix another time and place and give notice thereof in the manner required herein for special meetings of the Board. No notice to the directors shall be necessary to legally convene this meeting, except as provided in this Section 4.1.

**Section 4.2. Regular Meetings**. Regularly scheduled, periodic meetings of the Board may be held without notice at such times, dates and places as shall from time to time be determined by the Board.

**Section 4.3. Special Meetings**. Special meetings of the Board (a) may be called by the Chairman of the Board or President and (b) shall be called by the Chairman of the Board, President[12] or Secretary on the written request of a majority of directors then in office, or the sole director, as the case may be, and shall be held at such time, date and place as may be determined by the person calling the meeting or, if called upon the request of directors or the sole director, as specified in such written request. Notice of each special meeting of the Board shall be given, as provided in Section 9.3, to each director (i) at least 24 hours before the meeting if such notice is oral notice given personally or by telephone or written notice given by hand delivery or by means of a form of electronic transmission and delivery; (ii) at least two days before the meeting if such notice is sent by a nationally recognized overnight delivery service; and (iii) at least five days before the meeting if such notice is sent through the United States mail. If the Secretary shall fail or refuse to give such notice, then the notice may be given by the officer who called the meeting or the directors who requested the meeting. Any and all business that may be transacted at a regular meeting of the Board may be transacted at a special meeting. Except as may be otherwise expressly provided by applicable law, the Articles of Incorporation, or these By-Laws, neither the business to be transacted at, nor the purpose of, any special meeting need be specified

in the notice or waiver of notice of such meeting. A special meeting may be held at any time without notice if all the directors are present or if those not present waive notice of the meeting in accordance with Section 9.4.

**Section 4.4. Quorum; Required Vote**. A majority of the Board, but in any event not less than one-third of the Whole Board (as defined below), shall constitute a quorum for the transaction of business at any meeting of the Board, and the act of a majority of the directors present at any meeting at which there is a quorum shall be the act of the Board, except as may be otherwise specifically provided by applicable law, the Articles of Incorporation or these By-Laws. If a quorum shall not be present at any meeting, a majority of the directors present may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum is present. "Whole Board" shall mean the total number of directors that the Corporation would have if there were no vacancies.

**Section 4.5. Consent In Lieu of Meeting**. Unless otherwise restricted by the Articles of Incorporation or these By-Laws, any action required or permitted to be taken at any meeting of the Board or any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing or by electronic transmission, and the writing or writings or electronic transmission or transmissions (or paper reproductions thereof) are filed with the minutes of proceedings of the Board or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

**Section 4.6. Organization**. The chairman of each meeting of the Board shall be the Chairman of the Board or, in the absence (or inability or refusal to act) of the Chairman of the Board, the Chief Executive Officer (if he or she shall be a director) or, in the absence (or inability or refusal to act) of the Chief Executive Officer or if the Chief Executive Officer is not a director, the President (if he or she shall be a director) or in the absence (or inability or refusal to act) of the President or if the President is not a director, a chairman elected from the directors present. The Secretary shall act as secretary of all meetings of the Board. In the absence (or inability or refusal to act) of the Secretary, an Assistant Secretary shall perform the duties of the Secretary at such meeting. In the absence (or inability or refusal to act) of the Secretary and all Assistant Secretaries, the chairman of the meeting may appoint any person to act as secretary of the meeting.

## ARTICLE V.
## COMMITTEES OF DIRECTORS

**Section 5.1. Establishment**. The Board may designate one or more committees, each committee to consist of one or more of the directors of the Corporation. Each committee shall keep regular minutes of its meetings and report the same to the Board when required. The Board shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve any such committee.

**Section 5.2. Available Powers**. Any committee established pursuant to Section 5.1 hereof, to the extent permitted by applicable law and by resolution of the Board, shall have and may exercise all of the powers and authority of the Board in the management of the business and

affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers that may require it.

**Section 5.3. Alternate Members**. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of such committee.

**Section 5.4. Procedures**. Unless the Board otherwise provides, the time, date, place, if any, and notice of meetings of a committee shall be determined by such committee. At meetings of a committee, a majority of the number of members of the committee (but not including any alternate member, unless such alternate member has replaced any absent or disqualified member at the time of, or in connection with, such meeting) shall constitute a quorum for the transaction of business. The act of a majority of the members present at any meeting at which a quorum is present shall be the act of the committee, except as otherwise specifically provided by applicable law, the Articles of Incorporation, these By-Laws or the Board. If a quorum is not present at a meeting of a committee, the members present may adjourn the meeting from time to time, without notice other than an announcement at the meeting, until a quorum is present. Unless the Board otherwise provides and except as provided in these By-Laws, each committee designated by the Board may make, alter, amend and repeal rules for the conduct of its business. In the absence of such rules each committee shall conduct its business in the same manner as the Board is authorized to conduct its business pursuant to Article III and Article IV of these By-Laws.

## ARTICLE VI.
## OFFICERS

**Section 6.1. Officers**. The officers of the Corporation elected by the Board shall be a Chairman of the Board, a Chief Executive Officer, a President, a Treasurer, a Secretary and such other officers (including without limitation a Chief Financial Officer, Vice Presidents, Assistant Secretaries and Assistant Treasurers) as the Board from time to time may determine. Officers elected by the Board shall each have such powers and duties as generally pertain to their respective offices, subject to the specific provisions of this Article VI. Such officers shall also have such powers and duties as from time to time may be conferred by the Board. The Chairman of the Board, Chief Executive Officer or President may also appoint such other officers (including without limitation one or more Vice Presidents and Controllers) as may be necessary or desirable for the conduct of the business of the Corporation. Such other officers shall have such powers and duties and shall hold their offices for such terms as may be provided in these By-Laws or as may be prescribed by the Board or, if such officer has been appointed by the Chairman of the Board, Chief Executive Officer or President, as may be prescribed by the appointing officer.

(a) Chairman of the Board. The Chairman of the Board shall preside when present at all meetings of the stockholders and the Board. The Chairman of the Board shall advise and counsel the President and other officers and shall exercise such powers and perform such duties as shall be assigned to or required of the Chairman of the Board from time to time by the Board or these By-Laws. The Chairman of the Board must be a director of the Corporation.

(b) President. The President shall be the chief executive officer of the Corporation, shall have general supervision of the affairs of the Corporation and general control of all of its business subject to the ultimate authority of the Board, and shall be responsible for the execution of the policies of the Board. In the absence (or inability or refusal to act) of the Chairman of the Board, the President (if he or she shall be a director) shall preside when present at all meetings of the stockholders and the Board.

(c) Vice Presidents. In the absence (or inability or refusal to act) of the President, the Vice President (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Board) shall perform the duties and have the powers of the President. Any one or more of the Vice Presidents may be given an additional designation of rank or function.

(d) Secretary.

(i) The Secretary shall attend all meetings of the stockholders, the Board and (as required) committees of the Board and shall record the proceedings of such meetings in books to be kept for that purpose. The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board and shall perform such other duties as may be prescribed by the Board, the Chairman of the Board , Chief Executive Officer or President. The Secretary shall have custody of the corporate seal of the Corporation and the Secretary, or any Assistant Secretary, shall have authority to affix the same to any instrument requiring it, and when so affixed, it may be attested by his or her signature or by the signature of such Assistant Secretary. The Board may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing thereof by his or her signature.

(ii) The Secretary shall keep, or cause to be kept, at the principal executive office of the Corporation or at the office of the Corporation's transfer agent or registrar, if one has been appointed, a stock ledger, or duplicate stock ledger, showing the names of the stockholders and their addresses, the number and classes of shares held by each and, with respect to certificated shares, the number and date of certificates issued for the same and the number and date of certificates cancelled.

(e) Assistant Secretaries. The Assistant Secretary or, if there be more than one, the Assistant Secretaries in the order determined by the Board shall, in the absence (or inability or refusal to act) of the Secretary, perform the duties and have the powers of the Secretary.

(f) Treasurer. The Treasurer shall perform all duties commonly incident to that office (including, without limitation, the care and custody of the funds and securities of the Corporation which from time to time may come into the Treasurer's hands and the deposit of the funds of the Corporation in such banks or trust companies as the Board, the Chief Executive Officer or the President may authorize).

(g) Assistant Treasurers. The Assistant Treasurer or, if there shall be more than one, the Assistant Treasurers in the order determined by the Board shall, in the absence (or

inability or refusal to act) of the Treasurer, perform the duties and exercise the powers of the Treasurer.

**Section 6.2. Term of Office; Removal; Vacancies**. The elected officers of the Corporation shall be elected annually by the Board at its first meeting held after each annual meeting of stockholders. All officers elected by the Board shall hold office until the next annual meeting of the Board and until their successors are duly elected and qualified or until their earlier death, resignation, retirement, disqualification, or removal from office. Any officer may be removed, with or without cause, at any time by the Board. Any officer appointed by the Chairman of the Board, Chief Executive Officer or President may also be removed, with or without cause, by the Chairman of the Board, Chief Executive Officer or President, as the case may be, unless the Board otherwise provides. Any vacancy occurring in any elected office of the Corporation may be filled by the Board. Any vacancy occurring in any office appointed by the Chairman of the Board, Chief Executive Officer or President may be filled by the Chairman of the Board, Chief Executive Officer or President, as the case may be, unless the Board then determines that such office shall thereupon be elected by the Board, in which case the Board shall elect such officer.

**Section 6.3. Other Officers**. The Board may delegate the power to appoint such other officers and agents, and may also remove such officers and agents or delegate the power to remove same, as it shall from time to time deem necessary or desirable.

**Section 6.4. Multiple Officeholders; Stockholder and Director Officers**. Any number of offices may be held by the same person unless the Articles of Incorporation or these By-Laws otherwise provide. Officers need not be stockholders or residents of the State of Nevada.

## ARTICLE VII.
## SHARE CERTIFICATES

**Section 7.1. Entitlement to Certificates**. The shares of the Corporation shall be represented by certificates, provided that the Board may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of such a resolution by the Board, every holder of stock represented by certificates and upon request every holder of uncertificated shares shall be entitled to have a certificate signed in accordance with Section 7.3 representing the number of shares registered in certificate form. The Corporation shall not have power to issue a certificate representing shares in bearer form.

**Section 7.2. Multiple Classes of Stock**. If the Corporation shall be authorized to issue more than one class of stock or more than one series of any class, the Corporation shall (a) cause the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights to be set forth in full or summarized on the face or back of any certificate that the Corporation issues to represent shares of such class or series of stock or (b) in the case of uncertificated shares, within a reasonable time after the issuance or transfer of such shares, send

to the registered owner thereof a written notice containing the information required to be set forth on certificates as specified in clause (a) above; provided, however, that, except as otherwise provided by applicable law, in lieu of the foregoing requirements, there may be set forth on the face or back of such certificate or, in the case of uncertificated shares, on such written notice a statement that the Corporation will furnish without charge to each stockholder who so requests the powers, designations, preferences and relative, participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences or rights.

**Section 7.3. Signatures**. Each certificate representing capital stock of the Corporation shall be signed by or in the name of the Corporation by (a) the Chairman of the Board, the Chief Executive Officer, the President or a Vice President and (b) the Treasurer, an Assistant Treasurer, the Secretary or an Assistant Secretary of the Corporation. Any or all the signatures on the certificate may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, such certificate may be issued by the Corporation with the same effect as if such person were such officer, transfer agent or registrar on the date of issue.

**Section 7.4. Consideration and Payment for Shares**.

(a) Subject to applicable law and the Articles of Incorporation, shares of stock may be issued for such consideration, having in the case of shares with par value a value not less than the par value thereof, and to such persons, as determined from time to time by the Board. The consideration may consist of any tangible or intangible property or benefit to the Corporation including cash, promissory notes, services performed, contracts for services to be performed or other securities.

(b) Subject to applicable law and the Articles of Incorporation, shares may not be issued until the full amount of the consideration has been paid, unless upon the face or back of each certificate issued to represent any partly paid shares of capital stock or upon the books and records of the Corporation in the case of partly paid uncertificated shares, there shall have been set forth the total amount of the consideration to be paid therefor and the amount paid thereon up to and including the time said certificate representing certificated shares or said uncertificated shares are issued.

**Section 7.5. Lost, Destroyed or Wrongfully Taken Certificates**.

(a) If an owner of a certificate representing shares claims that such certificate has been lost, destroyed or wrongfully taken, the Corporation shall issue a new certificate representing such shares or such shares in uncertificated form if the owner: (i) requests such a new certificate before the Corporation has notice that the certificate representing such shares has been acquired by a protected purchaser; (ii) if requested by the Corporation, delivers to the Corporation a bond sufficient to indemnify the Corporation against any claim that may be made against the Corporation on account of the alleged loss, wrongful taking or destruction of such certificate or the issuance of such new certificate or uncertificated shares; and (iii) satisfies other reasonable requirements imposed by the Corporation.

(b) If a certificate representing shares has been lost, apparently destroyed or wrongfully taken, and the owner fails to notify the Corporation of that fact within a reasonable time after the owner has notice of such loss, apparent destruction or wrongful taking and the Corporation registers a transfer of such shares before receiving notification, the owner shall be precluded from asserting against the Corporation any claim for registering such transfer or a claim to a new certificate representing such shares or such shares in uncertificated form.

**Section 7.6. Transfer of Stock**.

(a) If a certificate representing shares of the Corporation is presented to the Corporation with a stock power or other indorsement requesting the registration of transfer of such shares or an instruction is presented to the Corporation requesting the registration of transfer of uncertificated shares, the Corporation shall register the transfer as requested if:

(i) in the case of certificated shares, the certificate representing such shares has been surrendered;

(ii) (A) with respect to certificated shares, the indorsement is made by the person specified by the certificate as entitled to such shares; (B) with respect to uncertificated shares, an instruction is made by the registered owner of such uncertificated shares; or (C) with respect to certificated shares or uncertificated shares, the indorsement or instruction is made by any other appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

(iii) the Corporation has received a guarantee of signature of the person signing such indorsement or instruction or such other reasonable assurance that the indorsement or instruction is genuine and authorized as the Corporation may request;

(iv) the transfer does not violate any restriction on transfer imposed by the Corporation that is enforceable in accordance with Section 7.8(a); and

(v) such other conditions for such transfer as shall be provided for under applicable law have been satisfied.

(b) Whenever any transfer of shares shall be made for collateral security and not absolutely, the Corporation shall so record such fact in the entry of transfer if, when the certificate for such shares is presented to the Corporation for transfer or, if such shares are uncertificated, when the instruction for registration of transfer thereof is presented to the Corporation, both the transferor and transferee request the Corporation to do so.

**Section 7.7. Registered Stockholders**. Before due presentment for registration of transfer of a certificate representing shares of the Corporation or of an instruction requesting registration of transfer of uncertificated shares, the Corporation may treat the registered owner as the person exclusively entitled to inspect for any proper purpose the stock ledger and the other books and records of the Corporation, vote such shares, receive dividends or notifications with respect to such shares and otherwise exercise all the rights and powers of the owner of such shares, except that a person who is the beneficial owner of such shares (if held in a voting trust or by a nominee on behalf of such person) may, upon providing documentary evidence of beneficial

ownership of such shares and satisfying such other conditions as are provided under applicable law, may also so inspect the books and records of the Corporation.

**Section 7.8. Effect of the Corporation's Restriction on Transfer**.

(a) A written restriction on the transfer or registration of transfer of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, if permitted by the NRS and noted conspicuously on the certificate representing such shares or, in the case of uncertificated shares, contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares, may be enforced against the holder of such shares or any successor or transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

(b) A restriction imposed by the Corporation on the transfer or the registration of shares of the Corporation or on the amount of shares of the Corporation that may be owned by any person or group of persons, even if otherwise lawful, is ineffective against a person without actual knowledge of such restriction unless: (i) the shares are certificated and such restriction is noted conspicuously on the certificate; or (ii) the shares are uncertificated and such restriction was contained in a notice sent by the Corporation to the registered owner of such shares within a reasonable time after the issuance or transfer of such shares.

**Section 7.9. Regulations**. The Board shall have power and authority to make such additional rules and regulations, subject to any applicable requirement of law, as the Board may deem necessary and appropriate with respect to the issue, transfer or registration of transfer of shares of stock or certificates representing shares. The Board may appoint one or more transfer agents or registrars and may require for the validity thereof that certificates representing shares bear the signature of any transfer agent or registrar so appointed.

## ARTICLE VIII.
## INDEMNIFICATION

**Section 8.1. Right to Indemnification**.

(a) Each person who was or is made a party or is threatened to be made a party to or is otherwise involved in any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "***proceeding***"), by reason of the fact that he or she is or was a director *or* officer, employee or agent of the Corporation or, while a director or officer, employee or agent of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust, other enterprise or nonprofit entity, including service with respect to an employee benefit plan (hereinafter a "***Covered Person***"), whether the basis of such proceeding is alleged action in an official capacity as a director, officer, employee or agent, or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Corporation to the fullest extent authorized or permitted by applicable law, as the same exists or may hereafter be amended, against all expenses, liability and loss (including, without limitation, attorneys' fees, judgments, fines, ERISA excise taxes and

penalties and amounts paid in settlement) reasonably incurred or suffered by such Covered Person in connection with such proceeding ("***Damages***"); *provided*, *however*, that, except as provided in Section 8.3 with respect to proceedings to enforce rights to indemnification and advancement of expenses, the Corporation shall indemnify a Covered Person in connection with a proceeding (or part thereof) initiated by such Covered Person only if such proceeding (or part thereof) was authorized by the Board.

(b) Certain indemnitees that are directors, officers, employees, stockholders, partners, limited partners, members, equityholders, managers, or advisors of any stockholder of the Corporation or any of such stockholder's affiliates (each such person, a "***Fund Indemnitee***") may have certain rights to indemnification, advancement of expenses and/or insurance provided by or on behalf of such stockholder and/or its affiliates (collectively, the "***Fund Indemnitors***"). Notwithstanding anything to the contrary in these By-Laws or otherwise: (i) the Corporation is the indemnitor of first resort (i.e., the Corporation's obligations to each Fund Indemnitee are primary and any obligation of the Fund Indemnitors to advance Damages or to provide indemnification for such Damages incurred by each Fund Indemnitee are secondary), (ii) the Corporation shall be required to advance the full amount of Damages incurred by each Fund Indemnitee and will be liable for the full amount of all such Damages paid in settlement to the extent legally permitted and as required by these Bylaws, without regard to any rights each Fund Indemnitee may have against the Fund Indemnitors, and (iii) the Company irrevocably waives, relinquishes and releases the Fund Indemnitors from any and all claims against the Fund Indemnitors for contribution, subrogation or any other recovery of any kind in respect thereof. Notwithstanding anything to the contrary in these By-Laws or otherwise, no advancement or payment by the Fund Indemnitors on behalf of a Fund Indemnitee with respect to any claim for which such Fund Indemnitee has sought indemnification or advancement of Damages from the Corporation shall affect the foregoing and the Fund Indemnitors will have a right of contribution and/or be subrogated to the extent of such advancement or payment to all of the rights of recovery of such Fund Indemnitee against the Corporation. The Fund Indemnitors are express third party beneficiaries of the terms of this Section 8.1(b).

**Section 8.2. Right to Advancement of Expenses**. In addition to the right to indemnification conferred in Section 8.1, a Covered Person shall also have the right to be paid by the Corporation the expenses (including, without limitation, attorneys' fees) incurred in defending, testifying, or otherwise participating in any such proceeding in advance of its final disposition (hereinafter an "***advancement of expenses***"); provided, however, that, if the Nevada Revised Statute ("***NRS***") requires, an advancement of expenses incurred by a Covered Person in his or her capacity as a director or officer of the Corporation (and not in any other capacity in which service was or is rendered by such Covered Person, including, without limitation, service to an employee benefit plan) shall be made only upon delivery to the Corporation of an undertaking (hereinafter an "***undertaking***"), by or on behalf of such Covered Person, to repay all amounts so advanced if it shall ultimately be determined by final judicial decision from which there is no further right to appeal (hereinafter a "***final adjudication***") that such Covered Person is not entitled to be indemnified for such expenses under this Article VIII or otherwise.

**Section 8.3. Right of Indemnitee to Bring Suit**. If a claim under Section 8.1 or Section 8.2 is not paid in full by the Corporation within 60 days after a written claim therefor has been received by the Corporation, except in the case of a claim for an advancement of expenses,

in which case the applicable period shall be 20 days, the Covered Person may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim. If successful in whole or in part in any such suit, or in a suit brought by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Covered Person shall also be entitled to be paid the expense of prosecuting or defending such suit. In any suit brought by (a) the Covered Person to enforce a right to indemnification hereunder (but not in a suit brought by a Covered Person to enforce a right to an advancement of expenses) it shall be a defense that, and (b) the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the Corporation shall be entitled to recover such expenses upon a final adjudication that, the Covered Person has not met any applicable standard for indemnification set forth in the NRS. Neither the failure of the Corporation (including its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) to have made a determination prior to the commencement of such suit that indemnification of the Covered Person is proper in the circumstances because the Covered Person has met the applicable standard of conduct set forth in the NRS, nor an actual determination by the Corporation (including a determination by its directors who are not parties to such action, a committee of such directors, independent legal counsel, or its stockholders) that the Covered Person has not met such applicable standard of conduct, shall create a presumption that the Covered Person has not met the applicable standard of conduct or, in the case of such a suit brought by the Covered Person, shall be a defense to such suit. In any suit brought by the Covered Person to enforce a right to indemnification or to an advancement of expenses hereunder, or by the Corporation to recover an advancement of expenses pursuant to the terms of an undertaking, the burden of proving that the Covered Person is not entitled to be indemnified, or to such advancement of expenses, under this Article VIII or otherwise shall be on the Corporation.

**Section 8.4. Non-Exclusivity of Rights**. The rights provided to Covered Persons pursuant to this Article VIII shall not be exclusive of any other right that any Covered Person may have or hereafter acquire under applicable law, the Articles of Incorporation, these By-Laws, an agreement, a vote of stockholders or disinterested directors, or otherwise.

**Section 8.5. Insurance**. The Corporation may maintain insurance, at its expense, to protect itself and/or any director, officer, employee or agent of the Corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the NRS.

**Section 8.6. Indemnification of Other Persons**. This Article VIII shall not limit the right of the Corporation to the extent and in the manner authorized or permitted by law to indemnify and to advance expenses to persons other than Covered Persons. Without limiting the foregoing, the Corporation may, to the extent authorized from time to time by the Board, grant rights to indemnification and to the advancement of expenses to any employee or agent of the Corporation and to any other person who is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to an employee benefit plan, to the fullest extent of the provisions of this Article VIII with respect to the indemnification and advancement of expenses of Covered Persons under this Article VIII.

**Section 8.7. Amendments**. Any repeal or amendment of this Article VIII by the Board or the stockholders of the Corporation or by changes in applicable law, or the adoption of any other provision of these By-Laws inconsistent with this Article VIII, shall, to the extent permitted by applicable law, be prospective only (except to the extent such amendment or change in applicable law permits the Corporation to provide broader indemnification rights to Covered Persons on a retroactive basis than permitted prior thereto), and will not in any way diminish or adversely affect any right or protection existing hereunder in respect of any act or omission occurring prior to such repeal or amendment or adoption of such inconsistent provision.

**Section 8.8. Certain Definitions**. For purposes of this Article VIII, (a) references to "other enterprise" shall include any employee benefit plan; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service that imposes duties on, or involves services by, a person with respect to any employee benefit plan, its participants, or beneficiaries; and (d) a person who acted in good faith and in a manner such person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" for purposes of Section 78.7502 of the NRS.

**Section 8.9. Contract Rights**. The rights provided to Covered Persons pursuant to this Article VIII (a) shall be contract rights based upon good and valuable consideration, pursuant to which a Covered Person may bring suit as if the provisions of this Article VIII were set forth in a separate written contract between the Covered Person and the Corporation, (b) shall fully vest at the time the Covered Person first assumes his or her position as a director or officer, employee or agent of the Corporation, (c) are intended to be retroactive and shall be available with respect to any act or omission occurring prior to the adoption of this Article VIII, (d) shall continue as to a Covered Person who has ceased to be a director or officer, employee or agent of the Corporation, and (e) shall inure to the benefit of the Covered Person's heirs, executors and administrators.

**Section 8.10. Severability**. If any provision or provisions of this Article VIII shall be held to be invalid, illegal or unenforceable for any reason whatsoever: (a) the validity, legality and enforceability of the remaining provisions of this Article VIII shall not in any way be affected or impaired thereby; and (b) to the fullest extent possible, the provisions of this Article VIII (including, without limitation, each such portion of this Article VIII containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

## ARTICLE IX.
## MISCELLANEOUS

**Section 9.1. Place of Meetings**. If the place of any meeting of stockholders, the Board or committee of the Board for which notice is required under these By-Laws is not designated in the notice of such meeting, such meeting shall be held at the principal business office of the Corporation; provided, however, if the Board has, in its sole discretion, determined that a meeting shall not be held at any place, but instead shall be held by means of remote communication pursuant to Section 9.5 hereof, then such meeting shall not be held at any place.

**Section 9.2. Fixing Record Dates**.

(a) In order that the Corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall not be more than 60 nor less than 10 days before the date of such meeting. If the Board so fixes a record date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination. If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the business day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the business day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance with the foregoing provisions of this Section 9.21(a) at the adjourned meeting.

(b) In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than 60 days prior to such action. If no record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

(c) In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than 10 days after the date upon which the resolution fixing the record date is adopted by the Board. If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is otherwise required, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Nevada, its principal place of business, or the Secretary. Delivery made to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board and prior action by the Board is otherwise required, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

**Section 9.3. Means of Giving Notice**.

(a) Notice to Directors. Whenever under applicable law, the Articles of Incorporation or these By-Laws notice is required to be given to any director, such notice shall be given either (i) in writing and sent by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, (ii) by means of facsimile telecommunication or other form of electronic transmission, or (iii) by oral notice given personally or by telephone. A notice to a director will be deemed given as follows: (i) if given by hand delivery, orally, or by telephone, when actually received by the director, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the director at the director's address appearing on the records of the Corporation, (iv) if sent by facsimile telecommunication, when sent to the facsimile transmission number for such director appearing on the records of the Corporation, (v) if sent by electronic mail, when sent to the electronic mail address for such director appearing on the records of the Corporation, or (vi) if sent by any other form of electronic transmission, when sent to the address, location or number (as applicable) for such director appearing on the records of the Corporation.

(b) Notice to Stockholders. Whenever under applicable law, the Articles of Incorporation or these By-Laws notice is required to be given to any stockholder, such notice may be given (i) in writing and sent either by hand delivery, through the United States mail, or by a nationally recognized overnight delivery service for next day delivery, or (ii) by means of a form of electronic transmission consented to by the stockholder, to the extent permitted by, and subject to the conditions set forth in, Section 78.320 of the NRS. A notice to a stockholder shall be deemed given as follows: (i) if given by hand delivery, when actually received by the stockholder, (ii) if sent through the United States mail, when deposited in the United States mail, with postage and fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, (iii) if sent for next day delivery by a nationally recognized overnight delivery service, when deposited with such service, with fees thereon prepaid, addressed to the stockholder at the stockholder's address appearing on the stock ledger of the Corporation, and (iv) if given by a form of electronic transmission consented to by the stockholder to whom the notice is given and otherwise meeting the requirements set forth above, (A) if by facsimile transmission, when directed to a number at which the stockholder has consented to receive notice, (B) if by electronic mail, when directed to an electronic mail address at which the stockholder has consented to receive notice, (C) if by a posting on an electronic network together with separate notice to the stockholder of such specified posting, upon the later of (1) such posting and (2) the giving of such separate notice, and (D) if by any other form of electronic transmission, when directed to the stockholder. A stockholder may revoke such stockholder's consent to receiving notice by means of electronic communication by giving written notice of such revocation to the Corporation. Any such consent shall be deemed revoked if (1) the Corporation is unable to deliver by electronic transmission two consecutive notices given by the Corporation in accordance with such consent and (2) such inability becomes known to the Secretary or an Assistant Secretary or to the Corporation's transfer agent, or other person responsible for the giving of notice; provided, however, the inadvertent failure to treat such inability as a revocation shall not invalidate any meeting or other action.

(c) Electronic Transmission. "***Electronic transmission***" means any form of communication, not directly involving the physical transmission of paper, that creates a record that may be retained, retrieved and reviewed by a recipient thereof, and that may be directly reproduced in paper form by such a recipient through an automated process, including but not limited to transmission by telex, facsimile telecommunication, electronic mail, telegram and cablegram.

(d) Notice to Stockholders Sharing Same Address. Without limiting the manner by which notice otherwise may be given effectively by the Corporation to stockholders, any notice to stockholders given by the Corporation under any provision of the NRS, the Articles of Incorporation or these By-Laws shall be effective if given by a single written notice to stockholders who share an address if consented to by the stockholders at that address to whom such notice is given. A stockholder may revoke such stockholder's consent by delivering written notice of such revocation to the Corporation. Any stockholder who fails to object in writing to the Corporation within 60 days of having been given written notice by the Corporation of its intention to send such a single written notice shall be deemed to have consented to receiving such single written notice.

(e) Exceptions to Notice Requirements. Whenever notice is required to be given, under the NRS, the Articles of Incorporation or these By-Laws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting that shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. If the action taken by the Corporation is such as to require the filing of a certificate with the Secretary of State of Nevada, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

Whenever notice is required to be given by the Corporation, under any provision of the NRS, the Articles of Incorporation or these By-Laws, to any stockholder to whom (1) notice of two consecutive annual meetings of stockholders and all notices of stockholder meetings or of the taking of action by written consent of stockholders without a meeting to such stockholder during the period between such two consecutive annual meetings, or (2) all, and at least two payments (if sent by first-class mail) of dividends or interest on securities during a 12-month period, have been mailed addressed to such stockholder at such stockholder's address as shown on the records of the Corporation and have been returned undeliverable, the giving of such notice to such stockholder shall not be required. Any action or meeting that shall be taken or held without notice to such stockholder shall have the same force and effect as if such notice had been duly given. If any such stockholder shall deliver to the Corporation a written notice setting forth such stockholder's then current address, the requirement that notice be given to such stockholder shall be reinstated. The exception in subsection (1) of the first sentence of this paragraph to the requirement that notice be given shall not be applicable to any notice returned as undeliverable if the notice was given by electronic transmission.

**Section 9.4. Waiver of Notice**. Whenever any notice is required to be given under applicable law, the Articles of Incorporation, or these By-Laws, a written waiver of such notice,

signed before or after the date of such meeting by the person or persons entitled to said notice, or a waiver by electronic transmission by the person entitled to said notice, shall be deemed equivalent to such required notice. All such waivers shall be kept with the books of the Corporation. Attendance at a meeting shall constitute a waiver of notice of such meeting, except where a person attends for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.5. Meeting Attendance via Remote Communication Equipment**.

(a) Stockholder Meetings. If authorized by the Board in its sole discretion, and subject to such guidelines and procedures as the Board may adopt, stockholders and proxyholders not physically present at a meeting of stockholders may, by means of remote communication:

(i) participate in a meeting of stockholders; and

(ii) be deemed present in person and vote at a meeting of stockholders, whether such meeting is to be held at a designated place or solely by means of remote communication, provided that (A) the Corporation shall implement reasonable measures to verify that each person deemed present and permitted to vote at the meeting by means of remote communication is a stockholder or proxyholder, (B) the Corporation shall implement reasonable measures to provide such stockholders and proxyholders a reasonable opportunity to participate in the meeting and to vote on matters submitted to the stockholders, including an opportunity to read or hear the proceedings of the meeting substantially concurrently with such proceedings, and (C) if any stockholder or proxyholder votes or takes other action at the meeting by means of remote communication, a record of such votes or other action shall be maintained by the Corporation.

(b) Board Meetings. Unless otherwise restricted by applicable law, the Articles of Incorporation, or these By-Laws, members of the Board or any committee thereof may participate in a meeting of the Board or any committee thereof by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other. Such participation in a meeting shall constitute presence in person at the meeting, except where a person participates in the meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting was not lawfully called or convened.

**Section 9.6. Dividends**. The Board may from time to time declare, and the Corporation may pay, dividends (payable in cash, property or shares of the Corporation's capital stock) on the Corporation's outstanding shares of capital stock, subject to applicable law and the Articles of Incorporation.

**Section 9.7. Reserves**. The Board may set apart out of the funds of the Corporation available for dividends a reserve or reserves for any proper purpose and may abolish any such reserve.

**Section 9.8. Contracts and Negotiable Instruments**. Except as otherwise provided by applicable law, the Articles of Incorporation or these By-Laws, any contract, bond, deed, lease, mortgage or other instrument may be executed and delivered in the name and on behalf of the Corporation by such officer or officers or other employee or employees of the Corporation as the Board may from time to time authorize. Such authority may be general or confined to specific instances as the Board may determine. The Chairman of the Board, the Chief Executive Officer, the President or any Vice President may execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation. Subject to any restrictions imposed by the Board, the Chairman of the Board, Chief Executive Officer President or any Vice President may delegate powers to execute and deliver any contract, bond, deed, lease, mortgage or other instrument in the name and on behalf of the Corporation to other officers or employees of the Corporation under such person's supervision and authority, it being understood, however, that any such delegation of power shall not relieve such officer of responsibility with respect to the exercise of such delegated power.

**Section 9.9. Fiscal Year**. The fiscal year of the Corporation shall be fixed by the Board.

**Section 9.10. Seal**. The Board may adopt a corporate seal which shall be in such form as the Board determines. The seal may be used by causing it or a facsimile thereof to be impressed, affixed or otherwise reproduced.

**Section 9.11. Books and Records**. The books and records of the Corporation may be kept within or outside the State of Nevada at such place or places as may from time to time be designated by the Board.

**Section 9.12. Resignation**. Any director, committee member or officer may resign by giving notice thereof in writing or by electronic transmission to the Chairman of the Board, the Chief Executive Officer, the President or the Secretary. The resignation shall take effect at the time specified therein, or at the time of receipt of such notice if no time is specified or the specified time is earlier than the time of such receipt. Unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

**Section 9.13. Surety Bonds**. Such officers, employees and agents of the Corporation (if any) as the Chairman of the Board, Chief Executive Officer, President or the Board may direct, from time to time, shall be bonded for the faithful performance of their duties and for the restoration to the Corporation, in case of their death, resignation, retirement, disqualification or removal from office, of all books, papers, vouchers, money and other property of whatever kind in their possession or under their control belonging to the Corporation, in such amounts and by such surety companies as the Chairman of the Board, Chief Executive Officer, President or the Board may determine. The premiums on such bonds shall be paid by the Corporation and the bonds so furnished shall be in the custody of the Secretary.

**Section 9.14. Securities of Other Corporations**. Powers of attorney, proxies, waivers of notice of meeting, consents in writing and other instruments relating to securities owned by the Corporation may be executed in the name of and on behalf of the Corporation by the Chairman of the Board, Chief Executive Officer, President or any Vice President. Any such

officer may, in the name of and on behalf of the Corporation, take all such action as any such officer may deem advisable to vote in person or by proxy at any meeting of security holders of any corporation in which the Corporation may own securities, or to consent in writing, in the name of the Corporation as such holder, to any action by such corporation, and at any such meeting or with respect to any such consent shall possess and may exercise any and all rights and power incident to the ownership of such securities and which, as the owner thereof, the Corporation might have exercised and possessed. The Board may from time to time confer like powers upon any other person or persons.

**Section 9.15. Forum for Adjudication of Disputes**. Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Nevada shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the NRS, or (iv) any action asserting a claim governed by the internal affairs doctrine. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 9.15.

**Section 9.16. Amendments**. The Board shall have the power to adopt, amend, alter or repeal the By-Laws. The By-Laws also may be adopted, amended, altered or repealed by the stockholders.

**Section 9.17. Effectiveness**. These By-Laws shall be effective as of [●], 2016.

# EXHIBIT B

## List of Assumed Contracts and Leases and the Cure Amounts

| List of Assumed Contracts and Leases[1] | | |
|---|---|---|
| **Name and Address of Executory Contract/Lease Counterparty** | **Description of Executory Contract or Lease** | **Cure Amount** |
| Aidant Fire and Security<br>15836 N. 77th Street<br>Scottsdale, AZ 85260-1700 | Fire and Security Monitoring Agreement(s) for three sites | $586.00 |
| American Registry for Internet Numbers, Ltd.<br>P.O. Box 232290<br>Centreville, VA 20120 | Registration services agreement | $0.00 |
| Arizona 811<br>(formerly Arizona Blue Stake, Inc.)<br>1405 W. Auto Drive<br>Tempe, AZ 85284 | Associate member agreement | $0.00 |
| Arizona Bureau of Land Management<br>One North Central Avenue<br>Suite 800<br>Phoenix, AZ 85004-4427 | ROW for telecommunications line - amendment and renewal; temporary use permit; ROW for telecommunications line; | $0.00 |
| Arizona Public Service Company<br>P.O. Box 53933<br>MS-4620<br>Phoenix, AZ 85072-3933 | Pole attachment lease; Debtor is lessee | $8,228.40 |
| AZ State Land<br>1616 W. Adams<br>Phoenix, AZ 85007 | Land Lease 018-101859-00; Debtor is lessee<br>Right-of-Way 018-107932-00; Debtor holds right-of-way; Right-of-Way 018-113322-00; Debtor is grantee; Right-of-Way 018-110776-00; Debtor is grantee | $0.00 |
| Buckeye, AZ<br>530 East Monroe Avenue<br>Buckeye, AZ 85326 | Telecommunications services<br>license agreement and all extensions and amendments | $0.00 |
| Bureau of Reclamation<br>P.O. Box 301503<br>Los Angeles, CA 90030-1503 | Debtor holds right-of-way 08-LG-32-3869 | $0.00 |
| Calix Inc.<br>c/o Dennis Qiunlan<br>1035 N. McDowell Boulevard<br>Petaluma, CA 94954 | Calix advantage program agreement; compass consumer connect agreement | $56,530.24 |
| CBN Building Maintenance<br>522 W. Roosevelt Street<br>Phoenix, AZ 85003 | Cleaning agreement | $0.00 |
| CDW<br>1850 E. Northrop Boulevard<br>Suite 200<br>Chandler, AZ 85286 | Equipment maintenance agreement | $0.00 |
| Century Link Communications, LLC<br>f/k/a/ Quest Communications Corporation<br>c/o Mitchell W. Katz<br>CenturyLink Law Department<br>1801 California Street<br>Suite 900<br>Denver, Colorado 80202 | Qwest Wholesale<br>Services Agreement<br>(Effective January 17, 2006) | $1,678.71 |
| CenturyLink Communications, LLC<br>a/k/a Qwest Communications Company, LLC<br>c/o Mitchell W. Katz<br>CenturyLink Law Department<br>1801 California Street<br>Suite 900<br>Denver, Colorado 80202 | Contract pursuant to which Accipiter provides services to CenturyLink Communications, LLC | $50,854.35 |
| CenturyLink Communications, LLC<br>f/k/a/ Quest Communications Corporation<br>c/o Mitchell W. Katz<br>CenturyLink Law Department<br>1801 California Street<br>Suite 900<br>Denver, Colorado 80202 | CenturyLink Total Advantage<br>Express Agreement<br>(Effective September 17, 2013) | $4,661.81 |
| City of Peoria, AZ<br>8401 W. Monroe Street<br>Peoria, AZ 85345 | Telecommunications license and renewal agreement | $0.00 |
| Cornerstone Marketing<br>7150 E. Camelback Road, #300<br>Scottsdale, AZ 85251 | Marketing contract | $0.00 |
| Corporate Fleet Leasing<br>P.O. Box 51<br>Cumberland Center, ME 04021 | Toyota vehicle lease(s); Debtor is lessee | $0.00 |

| Name and Address of Executory Contract/Lease Counterparty | Description of Executory Contract or Lease | Cure Amount |
|---|---|---|
| Cox Communications, Inc.<br>6205-B Peachtree Dunwoody Road, NE<br>Atlanta, GA 30328 | DIA office internet | $0.00 |
| Crown Castle GSA II LLC<br>c/o Global Signal Acquisitions # LLC<br>P.O. Box 403551<br>Atlanta, GA 30384-3551 | Signal acquisition agreement; Debtor is lessee | $912.09 |
| Electric Lightwave d/b/a Integra Wholesale<br>5055 East Washington Street<br>Suite 300<br>Phoenix, AZ 85034 | Dedicated internet services agreement and amendment | $0.00 |
| Estrella Publishing LLC<br>P.O. Box 6962<br>Goodyear, AZ 85338 | Advertising agreement | $0.00 |
| Francotyp-Postalia, Inc.<br>P.O. Box 4510<br>Carol Stream, IL 60197-4510 | Postage machine lease; Debtor is lessee | $0.00 |
| Global Signal Acquisitions<br>P.O. Box 403551<br>Atlanta, GA 30384-3551 | Tower Space; Debtor is lessee | $0.00 |
| Innovative Debt Recovery, Inc.<br>2222 S. Dobson Road<br>#1104<br>Mesa, AZ 85202 | Collection agreement | $0.00 |
| Kenneth C. Johnson<br>Herman & Whiteaker<br>3720 Rockledge Drive<br>#150<br>Bethesda, MD 20817 | Retainer agreement | $0.00 |
| Lion Tree Communications<br>2541 Eastlawn Street<br>Ypsilanti, MI 48197-1954 | Magazine ad contract | $0.00 |
| Maricopa County Water District<br>Pleasant Harbor<br>14825 W Grand Avenue<br>Surprise, AZ 85374 | Cable lease and Colocation lease; Debtor is lessee | $0.00 |
| Maricopa County<br>501 N. 44th Street<br>Suite 200<br>Phoenix, AZ 85008 | Franchise agreement | $0.00 |
| MetaSwitch Networks<br>100 Church Street<br>Enfield, EN2<br>6BQ, United Kingdom | Annual support plan | $0.00 |
| Moss Adams LLP<br>Chad Duval , Principal<br>3121 W. March Lane<br>Suite 100<br>Stockton, CA 95219 | MSA addendum; professional services agreement | $22,746.53 |
| Neonova<br>1201 Edwards Mill Road<br>Suite 102<br>Raleigh, NC 27607 | Master services agreement; service order | $5,846.86 |
| NexTraq<br>1200 Lake Hearn Drive<br>Suite 500<br>Atlanta, GA 30319 | Vehicle tracking agreement | $0.00 |
| One Call Locators, Ltd.<br>d/b/a Elm Locating & Utility Services<br>60 State Street<br>Suite 201<br>Peoria, IL 61602 | Underground facilities locating and marketing services agreement | $3,346.13 |
| Pacific Office Automation<br>P.O. Box 41602<br>Philadelphia, PA 19101-1602 | Copier lease; Debtor is lessee | $33.63 |
| PayDQ c/o CDS Global<br>Attention: Workforce<br>1901 Bell Avenue<br>Des Moines, IA 50315 | Outsourced payroll service agreement | $0.00 |

| Name and Address of Executory Contract/Lease Counterparty | Description of Executory Contract or Lease | Cure Amount |
|---|---|---|
| Qwest Corporation<br>d/b/a CenturyLink<br>QC<br>c/o Mitchell W. Katz<br>CenturyLink Law Department<br>1801 California Street<br>Suite 900<br>Denver, Colorado 80202 | Qwest Corporation<br>Wholesale Data Services<br>Agreement (Effective June 18, 2009) | $3,829.97 |
| RT Management Group, Inc.<br>3104 E. Camelback Rd, #575<br>Phoenix, AZ 85016 | Sun City pole lease; Debtor is lessee, Whispering Ranch pole lease; Debtor is lessee | $0.00 |
| Security Coverage<br>6060 Huntington Ct. NE<br>Cedar Rapids, IA 52402 | Security IT services reseller agreement/MSA | $0.00 |
| USA Digital Communications<br>11600 Broadway Extension<br>Suite 150<br>Oklahoma City, OK 73114 | Services agreement | $0.00 |
| USIC Locating<br>9045 North River Road<br>Suite 300<br>Indianapolis, IN 46240 | Underground facilities locating and marketing service agreement | $0.00 |
| VarData, LLC<br>135 Calkins Road<br>Rochester, NY 14623 | Fijitsu Network maintenance contract | $0.00 |
| Verizon Mobile and Verizon Wireless<br>Verizon Wireless Bankruptcy Administration<br>500 Technology Drive<br>Suite 550<br>Weldon Spring, MI 63304 | Corporate cell phone agreement; liability authorization agreement | $0 and $681.98 |
| Vivid Solutions, LLC<br>16211 N. Scottsdale Road<br>Suite A6A - 236<br>Scottsdale, AZ 85254 | Contractor agreement for customer installs | $1,495.00 |
| Worldpay<br>600 Morgan Falls Road<br>Suite 260<br>Atlanta, GA 30350-5813 | Credit card payment processing contract | $0.00 |
| Yavapai County<br>1015 Fair Street<br>Prescott, AZ 86305 | Telephone franchise agreement | $0.00 |
| [1] The Plan Proponents reserve the right in accordance with Section 5.02 of the Plan to modify this schedule prior to the Effective Date. | | |

# EXHIBIT C

## Key Terms of the Commercial Loan Agreement

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | AGREEMENT DATE | INITIALS |
|---|---|---|---|---|
| TBD | PINPOINT HOLDINGS, INC.<br>ACCIPITER COMMUNICATIONS, INC. | TBD | _____________ | |
| **NOTE AMOUNT** | **INDEX ( w/Margin )** | **RATE** | **MATURITY DATE** | **LOAN PURPOSE** |
| $4,000,000.00 | Not applicable | 7.00% / 9.00% | 12/31/2017 | Commercial |

## KEY TERMS OF THE COMMERCIAL LOAN AGREEMENT

Single Advance Loan

**DATE AND PARTIES.** The date of this Commercial Loan Agreement (Agreement) is____________. The parties and their addresses are as follows:

**LENDER:**

MCCOOK NATIONAL BANK, 220 Norris Avenue
PO BOX 1208
McCook, NE 69001-1208

**BORROWER:**

PINPOINT HOLDINGS, INC. ("PINPOINT"), a Nebraska Corporation
PO BOX 490
CAMBRIDGE, NE 69022-0490

ACCIPITER COMMUNICATIONS, INC.("ACCIPITER"), a Nevada Corporation
2238 W Lone Cactus Dr Ste 100 Phoenix AZ 85027

1. **DEFINITIONS.** For the purposes of this Agreement, the following terms have the following meanings.
   - A. **Accounting Terms.** In this Agreement, any accounting terms that are not specifically defined will have their customary meanings under generally accepted accounting principles.
   - B. **Insiders.** Insiders include those defined as insiders by the United States Bankruptcy Code, as amended; or to the extent left undefined, include without limitation any officer, employee, stockholder or member, director, partner, or any immediate family member of any of the foregoing, or any person or entity which, directly or indirectly, controls, is controlled by or is under common control with me.
   - C. **Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction.
   - D. **Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.
   - E. **Pronouns.** The pronouns "I", "me" and "my" refer to every Borrower signing this Agreement, individually and together with their heirs, successors and assigns, and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Agreement. "You" and "your" refers to the Loan's lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.
   - F. **Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.
2. **SINGLE ADVANCE.** In accordance with the terms of this Agreement and other Loan Documents, Lender will provide Borrowers with a term note in the amount of $4,000,000.00 (Principal). Pinpoint will receive the funds from this Loan in one advance. No additional advances are contemplated, except those made to protect and preserve Lender's interests as provided in this Agreement or other Loan Documents.
3. **DEMAND.** Borrowers each agree to fully repay the Loan on demand, but if no demand is made, Borrowers will repay the Loan by December 31, 2017.
4. **WARRANTIES AND REPRESENTATIONS.** Each Borrower makes to Lender the following warranties and representations which will continue as long as this Loan is in effect, except when this Agreement provides otherwise.
   - A. **Power.** I am duly organized, and validly existing and in good standing in all jurisdictions in which I operate. I have the power and authority to enter into this transaction and to carry on my business or activity as it is now being conducted and, as applicable, am qualified to do so in each jurisdiction in which I operate.
   - B. **Authority.** The execution, delivery and performance of this Loan and the obligation evidenced by the Note are within my powers, have been duly authorized, have received all necessary governmental approval, will not violate any provision of law, or order of court or governmental agency, and will not violate any agreement to which I am a party or to which I am or any of my property is subject.
   - C. **Name and Place of Business.** Other than previously disclosed in writing to you I have not changed my name or principal place of business within the last 10 years and have not used any other trade or fictitious name. Without your prior written consent, I do not and will not use any other name and will preserve my existing name, trade names and franchises.
   - D. **Hazardous Substances.** Except as I previously disclosed in writing and you acknowledge in writing, no Hazardous Substance, underground tanks, private dumps or open wells are currently located at, on, in, under or about the Property.
   - E. **Use of Property.** After diligent inquiry, I do not know or have reason to know that any Hazardous Substance has been discharged, leached or disposed of, in violation of any Environmental Law, from the property onto, over or into any other property, or from any other property onto, over or into the property.
   - F. **Environmental Laws.** I have no knowledge or reason to believe that there is any pending or threatened investigation, claim, judgment or order, violation, lien, or other notice under any Environmental Law that concerns me or the property. The property and any activities on the property are in full compliance with all Environmental Law.
   - G. **Loan Purpose.** The purpose of this Loan is to purchase the common stock of Accipiter Communications, Inc. dba Zona Communications.
   - H. **No Other Liens.** I own or lease all property that I need to conduct my business and activities. I have good and marketable title to all property that I own or lease. All of my Property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those to you or those you consent to in writing. For clarity purpose, parties recognize
     - i. that this funding is contingent upon entry of an order by the United States Bankruptcy Court confirming the plan of reorganization for Accipiter and the full release by USDA RUS of its liens on the assets of Accipiter, and
     - ii. that per terms of the same plan of reorganization, Lender will grant subordination of its lien on a certain office building located at 2238 W. Lone Cactus Drive, Suite 100, Phoenix, Arizona 85027 to the lien held by a designee of the unsecured creditors in the bankruptcy case of Accipiter, and which subordination will be limited to the amount of allowed claims held by unsecured creditors in the Accipiter bankruptcy case, and will not extend to any amount not originally claimed in such case.
   - I. **Compliance With Laws.** I am not violating any laws, regulations, rules, orders, judgments or decrees applicable to me or my property, except for those which I am challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should I lose.
5. **FINANCIAL STATEMENTS.** Borrowers will prepare and maintain their financial records using consistently applied generally accepted accounting principles then in effect. Borrowers will provide Lender with financial information in a form that Lender accepts and under the following terms.
   - A. **Certification.** Each Borrower represents and warrants that any financial statements that it provides Lender fairly represents its financial condition for the stated periods, is current, complete, true and accurate in all material respects, includes all of its direct or contingent liabilities and there has been no material adverse change in its financial condition, operations or business since the date the financial information was prepared.
   - B. **Frequency.** Borrowers will provide to Lender on an annual basis their financial statements, tax returns, annual internal audit reports or those prepared by independent accountants as soon as available or at least within days after the close of each of the fiscal years. Any annual financial statements that Borrowers provide Lender will be compiled statements.
   - C. **Requested Information.** Borrowers will provide Lender with any other information about their operations, financial affairs and condition within N/A days after your request.
6. **COVENANTS.** Until the Loan and all related debts, liabilities and obligations are paid and discharged, each Borrower will comply with the following terms, unless Lender waive compliance in writing.
   - A. **Participation.** I consent to you participating or syndicating the Loan and sharing any information that you decide is necessary about me and the Loan with the other participants or syndicators.

MNB
McCook National Bank

**B.** **Inspection.** Following your written request, I will immediately pay for all one-time and recurring out-of-pocket costs that are related to the inspection of my records, business or Property that secures the Loan. Upon reasonable notice, I will permit you or your agents to enter any of my premises and any location where my Property is located during regular business hours to do the following.

**(1)** You may inspect, audit, check, review and obtain copies from my books, records, journals, orders, receipts, and any correspondence and other business related data.

**(2)** You may discuss my affairs, finances and business with anyone who provides you with evidence that they are a creditor of mine, the sufficiency of which will be subject to your sole discretion.

**(3)** You may inspect my Property, audit for the use and disposition of the Property's proceeds and proceeds of proceeds; or do whatever you decide is necessary to preserve and protect the Property and your interest in the Property.

After prior notice to me, you may discuss my financial condition and business operations with my independent accountants, if any, or my chief financial officer and I may be present during these discussions. As long as the Loan is outstanding, I will direct all of my accountants and auditors to permit you to examine my records in their possession and to make copies of these records. You will use your best efforts to maintain the confidentiality of the information you or your agents obtain, except you may provide your regulator, if any, with required information about my financial condition, operation and business or that of my parent, subsidiaries or affiliates.

**C.** **Business Requirements.** I will preserve and maintain my present existence and good standing in the jurisdiction where I am organized and all of my rights, privileges and franchises. I will do all that is needed or required to continue my business or activities as presently conducted, by obtaining licenses, permits and bonds everywhere I engage in business or activities or own, lease or locate my property. I will obtain your prior written consent before I cease my business or before I engage in any new line of business that is materially different from my present business.

**D.** **Compliance with Laws.** I will not violate any laws, regulations, rules, orders, judgments or decrees applicable to me or my Property, except for those which I challenge in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its appeal should I lose. Laws include without limitation the Federal Fair Labor Standards Act requirements for producing goods, the federal Employee Retirement Income Security Act of 1974's requirements for the establishment, funding and management of qualified deferred compensation plans for employees, health and safety laws, environmental laws, tax laws, licensing and permit laws. On your request, I will provide you with written evidence that I have fully and timely paid my taxes, assessments and other governmental charges levied or imposed on me, my income or profits and my property. Taxes include without limitation sales taxes, use taxes, personal property taxes, documentary stamp taxes, recordation taxes, franchise taxes, income taxes, withholding taxes, FICA taxes and unemployment taxes. I will adequately provide for the payment of these taxes, assessments and other charges that have accrued but are not yet due and payable.

**E.** **New Organizations.** I will obtain your written consent before organizing, merging into, or consolidating with an entity; acquiring all or substantially all the assets of another; materially changing the legal structure, management, ownership or financial condition; or effecting or entering into a domestication, conversion or interest exchange.

**F.** **Other Liabilities.** I will not incur, assume or permit any debt evidenced by notes, bonds or similar obligations, except: debt in existence on the date of this Agreement and fully disclosed to you; debt subordinated in payment to you on conditions and terms acceptable to you; accounts payable incurred in the ordinary course of my business and paid under customary trade terms or contested in good faith with reserves satisfactory to you.

**G.** **Notice to You.** I will promptly notify you of any material change in my financial condition, of the occurrence of a default under the terms of this Agreement or any other Loan Document, or a default by me under any agreement between me and any third party which materially and adversely affects my property, operations, financial condition or business.

**H.** **Dispose of No Assets.** Without your prior written consent or as the Loan Documents permit, I will not sell, lease, assign, transfer, dispose of or otherwise distribute all or substantially all of my assets to any person other than in the ordinary course of business for the assets' depreciated book value or more.

**I.** **Insurance.** I will obtain and maintain insurance with insurers, in amounts and coverages that are acceptable to you and customary with industry practice. This may include without limitation insurance policies for public liability, fire, hazard and extended risk, workers compensation, and, at your request, business interruption and/or rent loss insurance. At your request, I will deliver to you certified copies of all of these insurance policies, binders or certificates. I will obtain and maintain a mortgagee clause (or lender loss payable clause) endorsement - naming you as the loss payee. If you require, I will also obtain an "additional insured" endorsement - naming you as an additional insured. I will immediately notify you of cancellation or termination of insurance. I will require all insurance policies to provide you with at least 10 days prior written notice to you of cancellation or modification. I consent to you using or disclosing information relative to any contract of insurance required by the Loan for the purpose of replacing this insurance. I also authorize my insurer and you to exchange all relevant information related to any contract of insurance required by any document executed as part of this Loan.

**J.** **Property Maintenance.** I will keep all tangible and intangible property that I consider necessary or useful in my business in good working condition by making all needed repairs, replacements and improvements and by making all rental, lease or other payments due on this property.

**K.** **Property Loss.** I will immediately notify you, and the insurance company when appropriate, of any material casualty, loss or depreciation to the Property or to my other property that affects my business.

**L.** **Additional Taxes.** I will pay all filing and recording costs and fees, including any recordation, documentary or transfer taxes or stamps, that are required to be paid with respect to this Loan and any Loan Documents.

**M.** **Loan Repayment.** Pinpoint expects receipt of funds from certain other transactions in late 2016 and 2017, of which the following amounts are to be directed to repayment of this loan:

i. $1,000,000 from the Switch sale in Q4/2016 or Q1/2017
ii. $1,000,000 from the Great Plains sale in April 2017
iii. $1,000,000 from the Switch sale in August 2017

Any remaining balance of this loan is payable at maturity.

**7.** **DEFAULT.** Each Borrower understands that Lender may demand payment anytime at its discretion. For example, Lender may demand payment in full if any of the following events (known separately and collectively as an Event of Default) occur:

**A.** **Payments.** I fail to make a payment in full when due.

**B.** **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Agreement or any other obligations I have with you.

**C.** **Business Termination.** I merge, dissolve, reorganize, end my business or existence, or a partner or majority owner dies or is declared legally incompetent.

**D.** **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Agreement.

**E.** **Other Documents.** A default occurs under the terms of any other Loan Document.

**F.** **Other Agreements.** I am in default on any other debt or agreement I have with you.

**G.** **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

**H.** **Judgment.** I fail to satisfy or appeal any judgment against me.

**I.** **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

**J.** **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

**K.** **Property Transfer.** I transfer all or a substantial part of my money or property.

**L.** **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

**M.** **Material Change.** Without first notifying you, there is a material change in my business, including ownership, management, and financial conditions.

**N.** **Other Events.** Anything else happens that causes you to reasonably believe that the prospect of payment, performance or realization of the Property is significantly impaired.

**8.** **REMEDIES.** After I default, you may at your option do any one or more of the following.

**A.** **Acceleration.** You may make all or any part of the amount owing by the terms of the Loan immediately due. If I am a debtor in a bankruptcy petition or in an application filed under section 5(a)(3) of the Securities Investor Protection Act, the Loan is automatically accelerated and immediately due and payable without notice or demand upon filing of the petition or application.

**B.** **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

**C.** **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

**D.** **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of the Loan, and accrue interest at the highest post-maturity interest rate.

**E.** **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of the Loan against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of the Loan" means the total amount to which you are entitled to demand payment under the terms of the Loan at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay the Loan, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.
Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.
You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

F. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

9. **COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, Borrowers agree to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under this Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan. All fees and expenses will be secured by the liens on the Property Borrowers have granted to Lender, if any. In addition, to the extent permitted by the United States Bankruptcy Code, Borrowers agree to pay the reasonable attorneys' fees incurred by Lender to protect its rights and interests in connection with any bankruptcy proceedings initiated by or against any Borrower.
10. **APPLICABLE LAW.** This Agreement is governed by the laws of Nebraska, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law.
11. **JOINT AND INDIVIDUAL LIABILITY AND SUCCESSORS.** Each Borrower's obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. Lender may sue any Borrower alone, or anyone else who is obligated on the Loan, or such parties together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect each Borrower's duty under the Loan and I will still be obligated to pay the Loan. Lender may assign all or part of its rights or duties under this Agreement or the Loan Documents without Lender's consent. If Lender assigns this Agreement, all of Borrowers' covenants, agreements, representations and warranties contained in this Agreement or the Loan Documents will benefit Lender's successors and assigns. Borrowers may not assign this Agreement or any of their rights under it without Lender's prior written consent. The duties of the Loan will bind Borrowers' successors and assigns.
12. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Agreement may not be amended or modified by oral agreement. No amendment or modification of this Agreement is effective unless made in writing and executed by the parties hereto. This Agreement and the other Loan Documents are the complete and final expression of the understanding between Borrowers and Lender. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable.
13. **INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.
14. **NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. Each Borrower will inform Lender in writing of any change in its name, address or other application information. Borrowers will provide Lender with any correct and complete financial statements or other information Lender's request. Borrowers agree to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve its obligations under this Loan and to confirm Lender's lien status on any Property. Time is of the essence.
15. **SIGNATURES.** By signing, each Borrower agrees to the terms contained in this Agreement. Each Borrower also acknowledges receipt of a copy of this Agreement.

**BORROWER:**

PINPOINT HOLDINGS, INC.

By__________________________________________________ Date____________________
MIKE URDAHL, President

By__________________________________________________ Date____________________
BACHTIYER KHOLMATOV, Chief Financial Officer

ACCIPITER COMMUNICATIONS, INC.

By__________________________________________________ Date____________________

By__________________________________________________ Date____________________

**LENDER:**

McCook National Bank

By__________________________________________________ Date____________________
TIM WIEBE, Vice President

EXHIBIT D

Selection of Christopher Linscott as Unsecured Creditor Trustee

Form of Deed of Trust and Assignment of Rents Related to the Unsecured Creditor Trust

**CHRISTOPHER G. LINSCOTT**
**3443 N. CAMPBELL AVENUE, SUITE 115**
**TUCSON, ARIZONA 85719**
**(520) 884-0176**

**EDUCATION**:

B.A. Psychology, Amherst College, 1980
M.S. Accounting, New York University GBA, 1982
Certified Public Accountant (CPA) 1984
Certified Fraud Examiner (CFE) 1992
Certified Insolvency and Restructuring Advisor (CIRA) 1997

**BACKGROUND**:

1994 - Present
**DIRECTOR**
**Keegan, Linscott & Kenon, P.C.**

Owner of CPA firm. Head of litigation support, bankruptcy and forensic accounting practice for the firm. Other duties include managing corporate financial audits and tax clients.

1990-1993
**DIRECTOR, LITIGATION SUPPORT SERVICES**
**Coopers & Lybrand – Tucson, AZ**

Responsible for work associated with financial aspects of clients and support for attorneys involved in litigation, fraud, receivership cases and bankruptcy work primarily in Arizona. Duties included damage calculation review and preparation, forensic accounting and financial analysis. Other duties included manager responsibilities for financial audits.

1989-1990
**CHIEF FINANCIAL OFFICER**
**Tombstone & Southern Railroad, Inc.**

Served for two years as CFO of start-up real estate and entertainment project in Cochise County. As one of three principals in this project, duties encompassed finance; budgeting, taxes, financial reporting, prospective reporting, capital solicitation, cash management and development of a business plan. Non-financial responsibilities included marketing, public speaking and recruitment of personnel.

1981-1989
**SENIOR AUDIT MANAGER**
**Peat Marwick Main & Co. – New York, NY**
**Peat Marwick Main & Co. – Boston, MA**

Responsibilities included the supervision of fifty staff people on sixty audits for twelve clients. Duties included public and private reporting to the SEC and other third parties, day-to-day management of field work, oral and written presentations to top client management and Board of Directors, technical problem-solving and profit maximization. Areas of industry expertise include real estate, financial institutions, higher education, and manufacturing.

**RANGE OF EXPERIENCE**:

Served as Trustee for various Chapter 11 and Chapter 7 entities primarily in the real estate, hospitality and health care sectors.

Served as Chief Restructuring Officer for corporate commercial entity in Chapter 11.

Served as Examiner in Chapter 11 proceedings focusing on real estate entities and alleged fraud.

Served as "Responsible Party" (Trustee) for Chapter 11 debtor in successful corporate reorganization.

Served as Receiver for corporate commercial entities and financial institutions in Arizona and California.

Served as Liquidating Trustee for corporate commercial entities.

Served as Plan Agent in Chapter 11 proceeding.

Served as Court appointed Special Master in commercial litigation case.

Prepared operating cash forecasts for real estate projects, commercial entities, municipal and non-profit businesses.

Developed financial packages used to obtain project financing for real estate projects and commercial entities.

Assisted in due diligence reviews of corporate commercial acquisitions and joint ventures.

Assisted in the preparation of SEC filings for bankrupt real estate entities.

Served as accountant for various creditor committees in Chapter 11 proceedings to analyze fraudulent conveyance and preference issues and financial viability of ongoing entities.

Reviewed bankruptcy documents of various commercial entities to determine asset liquidation preference and financial viability of ongoing entity.

Served as accountant for various Chapter 11 entities, assisting with various aspects of corporate reorganization.

Provided expert witness testimony, including damage analysis and accounting-related issues in commercial litigation cases dealing with lost profits, owner disputes, securities fraud, employee/employer disputes, personal injury, business interruption claims and various other matters.

Performed various fraud analyses and forensic procedures related to litigation in Ponzi schemes and employee embezzlement schemes.

Constructed damage theories including computer-generated models for commercial businesses involved in litigation.

Analysis of sole and separate property issues, hidden assets and closely held corporations in divorce settlement litigation.

**PROFESSIONAL ORGANIZATIONS**: Member of the Arizona Society of CPA's, American Institute of Certified Public Accountants, National Association of Certified Fraud Examiners, Association of Insolvency and Restructuring Advisors. Board of Directors of Bashas, Inc.

**AFTER RECORDING, RETURN TO**:

Stinson Leonard Street LLP
1850 N. Central Avenue, Suite 2100
Phoenix, AZ 85004
Attn: Christopher Simpson

# DEED OF TRUST AND ASSIGNMENT OF RENTS

| | |
|---|---|
| DATE: | ________________, 2016 |
| TRUSTOR: | Accipiter Communications, Inc., doing business as Zona Communications, a Nevada corporation with its principal place of business in Phoenix, Arizona, having an address at 2238 W. Lone Cactus Drive, Suite 100, Phoenix, Arizona 85027 |
| BENEFICIARY: | Those certain general unsecured creditors of Trustor determined to have allowed claims (the "**Unsecured Creditors**") pursuant to the Chapter 11 Plan of Reorganization proposed by Pinpoint Holdings, Inc. and the Official Committee of Unsecured Creditors confirmed on _____ (the "**Confirmed Plan**") in the Chapter 11 proceeding in the District of Arizona (the "**Bankruptcy Court**") styled as Case No. 2:14-bk-04372-GBN (the "**Bankruptcy Case**"). |
| TRUSTEE: | Keegan, Linscott & Kenon, P.C., Attn: Christopher G. Linscott, having an address at 3443 N. Campbell Avenue, Suite 115, Tucson, Arizona 85719 |

PROPERTY in Maricopa County, State of Arizona, with an address of 2238 W. Lone Cactus Drive, Suite 100, Phoenix, Arizona 85027 as further described as follows:

**See Exhibit A**

This Deed of Trust is made between the Trustor, Trustee and Beneficiary above named.

WITNESSETH: That Trustor irrevocably grants and conveys to Trustee in Trust, with Power of Sale, the above described real property, together with: (1) All buildings, improvements (including without limitation on site and infrastructure improvements) and fixtures now or hereafter placed thereon; (2) all existing leases, and all future leases executed with respect to such property; (3) all rents, issues, profits and income thereof (all of which are hereinafter called "property income"); and (4) all classes of property now, or at any time hereafter, attached to such property. All the above described real property and the foregoing itemized in items 1-4 and all property granted, transferred and assigned to Trustee hereunder is hereinafter collectively referred to as the "Property," and Trustor warrants that it is well and truly seized of a good and marketable title in fee simple to the real property hereby conveyed; that the title to all property conveyed by this Deed of Trust is clear, free and unencumbered other than junior liens encumbering the Property, and Trustor shall forever warrant and defend the same unto Beneficiary, its successors and assigns, against all claims whatsoever; SUBJECT, HOWEVER, to the right, power, and authority hereinafter given to and conferred upon Beneficiary to collect and apply such Property income; AND SUBJECT TO any easements and restrictions.

A. FOR THE PURPOSE OF SECURING: Performance of the obligations of Trustor to make cash distributions to Beneficiary contained in the Confirmed Plan and in this Deed of Trust (the "**Indebtedness**").

B. TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR COVENANTS AND AGREES:

1. To keep said Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon, and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said Property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said Property in violation of law; and to do all other acts which from the character or use of said Property may be reasonably necessary, the specific enumeration's herein not excluding the general.

2. To keep all improvements now or hereafter erected on said Property continuously insured against loss by fire or other hazards in an amount not less than the total replacement cost of any and all improvements which have been constructed on the Property but not less than the total amount of the obligation secured hereby.

3. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses of

Beneficiary or Trustee, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear or be named, and in any suit brought by Beneficiary to enforce this Deed of Trust.

4. To pay: before delinquent, all taxes and assessments affecting said Property; when due, all encumbrances, charges and liens, on said Property or any part thereof, which appear to be prior or superior hereto; all reasonable costs, fees, and expenses of this Deed of Trust, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance and all lawful charges, costs, and expenses in the event of reinstatement of, following default and the applicable cure period, this Deed of Trust or the obligations secured hereby.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and after providing Trustor with the applicable notice and cure period as provided herein, and without releasing Trustor from any obligation hereof, may: Make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge, or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel, and pay his reasonable fees. All amounts so paid, shall be part of the Indebtedness secured by this Deed of Trust and a lien on the above Property.

5. To pay immediately and without demand all sums expended by Beneficiary or Trustee pursuant to the provisions hereof. Any amounts so paid by Beneficiary or Trustee shall become part of the Indebtedness secured by this Deed of Trust and a lien on said Property and immediately due and payable at option of Beneficiary or Trustee.

C. IT IS MUTUALLY AGREED:

1. That Beneficiary or Trustee may declare the Indebtedness due and payable in full upon any Transfer (hereinafter defined) of the Property. A "Transfer" is defined as any sale, conveyance, alienation or other transfer of the Property or any part thereof but shall not include a junior mortgage or encumbrance of the Property.

2. That any award of damages in connection with any condemnation or any taking, or for injury to the property by reason of public use, or for damages for private trespass or injury thereto, is assigned and shall be paid to Beneficiary as further security for all obligations secured hereby (reserving unto Trustor, however, the right to sue therefor and the ownership thereof, subject to this Deed of Trust), and upon receipt of such moneys Beneficiary may hold the same as such further security, or apply or release the same in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

3. That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment when due of all other sums

so secured or to declare default for failure so to pay. Time is of the essence of this Deed of Trust.

4. That upon written request of Trustee stating that all sums secured hereby have been paid and upon written evidence to Trustee by Trustor of all such payments, and upon surrender of this Deed of Trust to Trustee for cancellation and retention, and upon payment of its fees, Trustee shall release and reconvey, without covenant or warranty, express or implied, the Property then held hereunder, the recitals in such reconveyance, of any matters or facts, shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." The Trustee shall be entitled to rely upon written evidence to Trustee by Trustor of payments made pursuant to this Deed of Trust and the Confirmed Plan without further verification or inquiry.

5. That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power, and authority, during the continuance of this Deed of Trust to collect the Property income, reserving to Trustor the right, prior to any default by Trustor in payment of any Indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such Property income as it becomes due and payable. Upon any such default Beneficiary may, within ten (10) days for a monetary default without notice or twenty (20) days of written notice for a non-monetary default, either by person, by agent, or by receiver to be appointed by a court, without regard to the adequacy of any security for the Indebtedness hereby secured or the solvency of the Trustor, enter upon and take possession of said Property or any part thereof, in his own name sue for or otherwise collect such Property income, including that past due and unpaid and apply the same, less costs and expenses of operation and collection, including reasonably attorneys' fees of Beneficiary and Trustee, upon any Indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said Property, the collection of such Property income, and the application thereof as aforesaid, shall not cure or waive any default or notice of Trustee's sale hereunder or invalidate any act done pursuant to such notice. Beneficiary shall expressly have all rights provided for in A.R.S.§§ 33-702B and 33-807.

6. That upon default by Trustor in the payment of any Indebtedness secured hereby, in performance of any obligation of Trustor under the Confirmed Plan or this Deed of Trust or upon the sale, conveyance, other transfer, without the prior written consent of Beneficiary (which consent will not be unreasonably withheld) (an "**Event of Default**"), Beneficiary or Trustee may declare all sums secured hereby immediately due and payable within ten (10) days for a monetary default without notice of any kind and twenty (20) days of written notice of a non-monetary default thereof, setting forth the nature thereof, and of election to cause to be sold said property under this Deed of Trust. Beneficiary also shall deposit with Trustee this Deed of Trust and all documents evidencing expenditures secured hereby. The above remedy is in addition to the right of Beneficiary to sue Trustor under the terms of the Confirmed Plan.

Trustee shall record and give notice of Trustee's sale in the manner required by law, and after the lapse of such time as may then be required by law, Trustee shall sell, in the manner required by law, said Property at public auction at the time and place fixed by it in said notice of Trustee's sale to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee at its discretion may postpone or continue the sale from time to time by giving

notice of postponement or continuance by public declaration at the time and place last appointed for the sale. Trustee shall deliver to such purchaser its Deed conveying the Property so sold, but without any covenant or warranty, expressed or implied. Any persons, including Trustor, Trustee or Beneficiary, may purchase at such sale. The purchaser at the Trustee's sale shall be entitled to immediate possession of the Property as against the Trustee or other persons in possession and shall have a right to the summary proceedings to obtain possession provided in Title 12, Chapter 8, Article 4, Arizona Revised Statutes, together with costs and reasonable attorneys' fees.

After deducting all costs, fees, and expenses of Trustee and of this Deed of Trust, including cost of evidence of title in connection with sale and reasonable attorney's fees of Beneficiary and Trustee, Trustee shall apply the proceeds of sale to payment of: all sums then secured hereby and all other sums due under the terms hereof, with accrued interest; and the remainder, if any, to the person or persons legally entitled thereto, or as provided in A.R.S. § 33-812. To the extent permitted by law, an action may be maintained by Beneficiary to recover a deficiency judgment for any balance due hereunder. In lieu of sale pursuant to the power of sale conferred hereby, this Deed of Trust may be foreclosed in the same manner provided by law for the foreclosure of mortgages on real property. Beneficiary shall also have all other rights and remedies available to it hereunder and at law or in equity. All rights and remedies shall be cumulative.

7. That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

8. That Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

9. In the event it becomes necessary for the Trustee on behalf of the Beneficiary to employ legal counsel or to take legal action to collect the Indebtedness secured by this Deed of Trust, to enforce any provision of the Deed of Trust or to protect any of Beneficiary's rights under this Deed of Trust, Trustor agrees to pay to Trustee, in addition to taxable costs of any legal proceeding or action and other sums due and payable pursuant hereto, reasonable attorneys' fees actually incurred, and all costs of preparation and conduct of such proceedings, including costs of title searches and title policy commitments, all of which shall be a lien upon the property and secured hereby.

10. Should any term, provision, covenants or condition of this Deed of Trust be held to be void or invalid the same shall not affect any other term, provision, covenant or condition of this Deed of Trust.

11. The Deed of Trust shall be governed by and interpreted under the laws of the State of Arizona.

The undersigned Trustor requests that a copy of any notice of Trustee's sale hereunder be mailed to it at the address set forth above.

**TRUSTOR**:

**Accipiter Communications, Inc.,**
2238 W. Lone Cactus Drive, Suite 100
Phoenix, Arizona 85027

By: ______________________________________

Name: ____________________________________

Title: _____________________________________

STATE OF ARIZONA )
) ss.
County of Maricopa )

The foregoing instrument was acknowledged before me this ____ day of ___________, 20____, by ___________________________.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

______________________________
Notary Public

My Commission Expires

________________________

# EXHIBIT E

## Litigation Claims

**Litigation Claims**

Purchaser and Reorganized Accipiter reserve their rights to object to any proofs of claim other than those listed on the Claims Schedule.

# EXHIBIT F

## Revised Appendix Five
## Amended and Restated Claims Schedule

| Appendix Five - Amended and Restated Claims Schedule | | |
|---|---|---|
| **Name of Unsecured Creditor** | **Claim No. (if filed POC)** | **Unsecured Claim Amount** |
| Aidant Fire and Security | 7-1 | $586.00 |
| Arizona Public Service Company | 4-1 | $8,228.40 |
| Arrowhead Direct | NA | $16.02 |
| Bennett & Bennett PLLC | NA | $215.00 |
| Bolinger, Segars, Gilbert & Moss LLP | 9-1 | $21,000.00 |
| Brownstein Hyatt Farber Shreck | NA | $3,456.81 |
| BSG Cleaning Solutions | NA | $326.18 |
| Caliber Electrical Contractors | NA | $380.00 |
| Calix Inc. | 12-1 | $56,530.24 |
| CenturyLink Communications LLC | 13-1 | $6,340.52 |
| CenturyLink Communications LLC | 30-1 | $50,854.35 |
| City of Phoenix | NA | $9.80 |
| Comdata Inc. | 3-1 | $7,586.16 |
| Crown Castle GSA II LLC | NA | $912.09 |
| Drinker, Biddle & Reath, LLP | 18-1 | $4,147.13 |
| ESPN Media Networks | NA | $202.08 |
| Federal Express | NA | $76.06 |
| Graybar Electric, Inc. | 27-1 | $1,712.22 |
| Home Builders Association of Central Arizona | NA | $440.96 |
| Home Depot | NA | $53.84 |
| Metrostudy | NA | $2,008.30 |
| Moss Adams LLP | 23-1 | $22,746.53 |
| National Telecommunications Cooperative Association | 17-1 | $3,042.00 |
| Neonova | NA | $5,846.86 |
| Nestle Pure Life | NA | $37.89 |
| Neustar | NA | $454.41 |
| Not Just Printing | 5-1 | $1,460.00 |
| NRTC - Truebank | NA | $3,250.73 |
| Olsson Frank Weeda Terman Matz PC | 20-1 | $12,203.46 |
| Phoenix Synergy | 22-1 | $2,620.09 |
| Pivot Group, LLC | 26-1 | $4,068.92 |
| Qwest Corporation dba CenturyLink | 14-1 | $3,829.97 |
| Talus Development Corporation | 8-1 | $335,281.40 |
| Tierra Madre | NA | $26.01 |
| USA Digital Communications | 21-1 | $861.06 |
| Verizon Wireless | NA | $681.98 |
| Vivid Solutions, LLC | 19-1 | $1,495.00 |
| | **TOTAL:** | **$562,988.47** |